IN RE ALLIS'S ESTATE.

*October 21—November 15, 1904.*

*Trusts and trustees: Investment of trust funds: Discretion of trustee: Trust companies: Statutes: Return to principal of premium paid for purchase of securities.*

1. Except as modified by statute, trustees cannot be relieved from liability for the investment of trust funds in other than governmental or real-estate securities.

2. Ch. 317, Laws of 1903 (providing that every executor, guardian, or trustee, except where it is otherwise provided by the will or instrument of trust, if any, may invest trust funds in governmental or real-estate securities as provided by law, and also may, under the direction and with the approval of the proper court, invest trust funds as therein enumerated), is *held* to have been enacted in recognition of the law as declared by the supreme court, and that investments in securities, other than those specified in the act, do not come within the protection of the law.

3. Sec. 1791*h*, Stats. 1898, giving a trust company the right, in its discretion, to invest trust funds in certain specified securities, "or in such real or personal securities as they may deem proper," relates to the investment of the funds owned by

the trust company in its corporate capacity, and does not include money held by it in trust as executor, administrator, or any other trust relation.

4. Under a will giving trustees power "in their discretion to invest . . . and employ said real estate and generally manage the same, to continue the same as it is invested at the time of my death—and especially as invested in (a designated corporation), or to change such investments," and a finding by the trial court, that investments in securities other than those specified in ch. 317, Laws of 1903, "were such as an ordinarily prudent person would make, having regard to the permanence and security of the principal, as well as the production of an income for the beneficiaries under the will," it is *held* that the trustees in purchasing railway and street-railway bonds, acted within the authority and direction as expressed in such will, and that the court properly approved them.

5. Where in the investment of trust funds, the income of which is to be paid to beneficiaries during the life of the trust, the principal to be paid to others on its termination, the trustee bought securities at a premium, the trustee should take from the annual income such portion as will, under established rules and tables, repay the *corpus* of the estate the amount paid therefrom in purchasing the securities.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed in part, affirmed in part.*

Appeal from the judgment of the circuit court, entered May 14, 1904, which affirmed in part and reversed in part the decree of the county court of Milwaukee county entered in the proceeding instituted by the trustees under the will of Ernest Allis, deceased, allowing their annual account, disapproving of their investments, and approving their action in apportioning the annual income on the investments by setting aside a portion yearly to repay the *corpus* of the estate the premiums paid in the purchase of certain securities mentioned in their account. It appears the present trustees during the years 1900 and 1902 invested the greater portion of the fund in their charge in railroad and street railway bonds, paying a considerable sum as premium. It appears that the

investments, in a financial sense, are deemed to be good and safe, from the standpoint of a prudent and provident dealer in securities, as permanent and good interest-bearing investments. The will of the deceased, disposing of the estate, directs that the residuary estate shall be held by the trustees, who are empowered:

"To sell, mortgage, or lease said real estate; convey or exchange the same; convert the realty into personalty or personalty into realty; and so to do with any and all parts of said estate; granting to them full power and authority in their discretion to invest, reinvest and employ said real estate and generally manage the same; to continue the same as it is invested at the time of my death—and especially as invested in the E. P. Allis Company, or to change such investments; to receive and collect such profits and income thereof, and to dispose of the net income as follows."

Here follow the provisions directing the disposition of the income, and the payment thereof by the trustees, during the life of the trust, to the widow and child or children; and, in case of the widow's death under certain circumstances, a fixed sum is to be paid her mother during life. The only child of the deceased surviving him is a daughter about fourteen years of age, whose guardian *ad litem* prosecutes this appeal.

For the appellant, *Margaret W. Allis,* there was a brief by *Miller, Noyes & Miller,* attorneys for *Geo. H. Noyes,* guardian *ad litem,* and oral argument by *Geo. H. Noyes.*

For the respondent, *Penelope Winston Allis,* there was a brief by *Quarles, Spence & Quarles,* and *Charles Quarles,* of counsel, and oral argument by *Charles Quarles.* To the point that no sinking fund can be established if it appears that the purpose of the testator was primarily to protect the life tenant, they cited *McLouth v. Hunt,* 154 N. Y. 179–192; *In re Hoyt,* 160 N. Y. 607; *N. Y. Life Ins. & T. Co. v. Baker,* 165 N. Y. 484; *Hite's Devisees v. Hite's Executor,* 93 Ky. 257; *Hemenway v. Hemenway,* 134 Mass. 446; *N. E. Trust Co. v. Eaton,* 140 Mass. 532.

For the respondents *Milwaukee Trust Co.* and *John W. Barr, Jr.,* as trustees under the will, there was a brief by *Van Dyke & Van Dyke & Carter,* and oral argument by *G. D. Van Dyke.*

SIEBECKER, J.   The trustees petitioned the county court to allow the account of their administration of the trust as stated, and to approve and ratify the investments made by them in railroad and street railway bonds, and asked to be authorized to continue these investments, and to make others of like character, if, in the execution of the trust, it was found expedient and promotive of the interests of the persons interested in the estate.   The conflicting claims of the parties on the matters submitted by the petition necessitates a determination of the question whether the investments made and reported by the trustees are sanctioned by the law of this state.

The subject has many times been before the courts of this country and England in its various phases, and has occasioned much discussion of the question as to what securities trustees will be allowed to purchase under their obligation to protect the fund for those beneficially interested.   Counsel for the respective parties on this appeal have presented an exhaustive and instructive review of the adjudications and the history of the law as it has been enforced in various jurisdictions.   A full and well-considered discussion of it is presented in the case of *Lamar v. Micou,* 112 U. S. 452, 5 Sup. Ct. 221.   We are asked by respondents to treat the question as an original proposition in this court, in view of these adjudications and the question actually before the court in the case of *Simmons v. Oliver,* 74 Wis. 633, 43 N. W. 561.   In that case the trustee had invested a portion of the trust fund by loaning it to a manufacturing company, taking its indorsed promissory note, at a time when the company was in good financial standing, and the indorsers were reputed to be perfectly responsible and of ample means.   The company and the indorsers, through

financial embarrassments, were unable to pay the note in full, which occasioned a loss of a part of the fund. The trustee asked that he be relieved from liability to make the loss good, upon the ground that he had acted in good faith, and considered the investment a prudent and safe one. In passing judgment on the case thus presented, the court states:

"We are disposed, on this subject, to follow the English rule, which has been adopted in some of our sister states, and hold that the trustee cannot invest trust funds in personal securities, and that it is not an exercise of sound discretion to so invest them."

This declaration is followed by an excerpt from the opinion in the case of *Ackerman v. Emott*, 4 Barb. 626, giving it as the English rule that a trustee can only protect himself against loss by investing the trust fund in real-estate or governmental securities. The court announced that counsel in the argument of that case, as in the instant case, urged that this rule so adopted "be changed to meet the conditions and needs of present business and methods of investment." After consideration of the reasons submitted, the court adds:

"If this rule shall be found inconvenient, or, on the whole, not best adapted to the new condition of things, or to the necessities of present business arrangements, the legislature can change it by authorizing the investment of trust funds in shares of stock, or on the credit of business corporations, or on the personal security of individuals. We prefer to adhere to the well-established rule in relation to the investment of trust funds, and, if a change is to be made, let the legislature make it."

This pronouncement of the law on the subject is certainly explicit, and was expressly assumed to be necessarily involved in the determination of the case, and we feel bound to so regard it.

We think that ch. 317, Laws of 1903, relating to the investment of trust funds by executors, guardians, and trustees, bears evidence that the legislature deemed this to be the established law. Section 1 of this act reads:

"Every executor, guardian or trustee, except where it is otherwise expressly directed by the will or instrument of trust, if any, may invest trust funds in governmental and real-estate securities as provided by law, and also, may, under the direction and with the approval of the proper court, invest trust funds" as therein enumerated.

The language, "may invest trust funds in governmental and real-estate securities as provided by law," recognizes that the law of the state sanctions investments of trust funds according to the rule laid down in the decision in *Simmons v. Oliver, supra;* and we are led to believe that the legislature enacted this chapter in recognition of the law so declared, and modified the rule by enlarging the field for the investment of such funds to the extent and upon the conditions contained in the act. In view of this legislative and judicial declaration on the subject, we perceive no sufficient grounds for changing or modifying the established rule controlling trustees making investments of trust funds.

The investments reported to the court, as stated, were made prior to the passage of the chapter of the laws last referred to. The petitioners, however, properly asked the approval of the court for their future guidance in the administration of the trust in respect to these investments, as well as others they will likely be required to make out of this fund. None of the securities purchased, except those of the Chicago, Milwaukee & St. Paul Railway Company bonds, are of the class sanctioned by this act. The obvious intent of the legislature in adopting this act was to extend the field of investment of trust funds by executors, guardians, and trustees beyond the limits of governmental and real-estate securities, by including the classes enumerated in the act, under the direction and with the approval of the court. We find no ambiguity in the phraseology of the act. The language and the provisions clearly show how investments of trust funds shall be made. Before the passage of the act, trustees were not protected against loss

of trust funds, though acting in good faith, unless they invested in governmental or real-estate securities. Under the provisions of this law, they may also invest in the securities specified in the act, if the court will approve and so direct. This clearly implies that no other investment of trust funds comes within the protection of the law.

The *Milwaukee Trust Company* is one of the trustees who made these investments. It is argued that sec. 1791*h*, Stats. 1898, gives it the right, in its discretion, to invest these trust funds in the manner as reported to the court. Looking to the subject-matter and intent of this section, and giving effect to the evident purpose and idea of the legislature as therein expressed, it is manifest that the section relates solely to the investment of the funds owned by the trust company in its corporate capacity, and does not include money held by it in trust as executor, administrator, or any other trust relation.

It is claimed these investments can be justified as properly made under the authority and direction of the will. The will grants the trustees "full power and authority in their discretion to invest . . . and employ said real estate and generally manage the same; to continue the same as it is invested at the time of my death—and especially as invested in the E. P. Allis Company, or to change such investments." The powers thus conferred are of the broadest kind, and are to be exercised by the trustees, in their discretion, in the execution of the trust. The purpose of the testator, manifested in this and other provisions of the will, evidently was to have the trustees invest and employ the *corpus* of the estate in obtaining securities in kind like those specified in the will; and he contemplated that they should purchase such securities as a prudent and provident person would purchase as good and safe investments, and that they should not be restricted to the conditions and limitations imposed by law for the investment of trust funds. Under the powers so given the trustees, and the facts found by the court, these investments "were such as

an ordinarily prudent person would make, having regard to the permanence and security of the principal, as well as the production of an income for the beneficiaries under the will;" and we hold that the trustees, in purchasing these securities, acted within the authority and direction as expressed in the will, and the court properly approved them.

The county court approved the course pursued by the trustees in applying a part of the annual earnings of these securities to the payment of the premium for the purpose of restoring to the *corpus* of the estate the exact amount taken therefrom for premiums at the time of purchase. The circuit court reversed the holding of the county court, and directed that all of the annual income from these securities be paid to the life tenants during the existence of the trust. The trustees have pursued the course of taking from the annual income a portion, under established rules and tables fixing the amount to be taken from each annual payment on the investments, to repay the *corpus* of the estate the amount paid therefrom as premiums in purchasing the security. Though the basis of this calculation is not before us, we assume that it was correctly made, and based upon computations which are accepted as standard in computing what amount should be regularly taken from the annual payments on the investments for repayment of the capital advanced as premium. It is contended that their course in thus apportioning the annual payments is an unjust charge upon the interest of the life tenant, and gives the remainderman an unfair advantage, by increasing the *corpus* of the estate, for the reason that the securities may grow more valuable, and be converted into money, and thus augment the capital of the estate by the portion annually taken from the income and the increase of value realized in excess over cost. This, no doubt, is the result under the circumstances supposed; but it is likewise true that, in case the securities decrease in value while owned by the estate, and if they must then be converted into money, the capital of the es-

tate is diminished by the amount of such depreciation.  At the close of these transactions, whatever amount is realized by the trustees would constitute the new *corpus* of the estate, whether increased or diminished, of which the life tenant is entitled to the income.  But the element of rise and fall in the price of securities as a marketable commodity is of little weight in dealing with investments of trust funds, for the reason that trustees are not permitted to traffic in stocks and securities, like individuals, for the purposes of gain.  The principles controlling their investment are safety and permanency, with the view of securing a probable income for the beneficiaries.  Treating the purchase of securities in this view, it is obvious that the amount advanced out of the capital of the fund for the payment of premiums should be made good, to prevent a loss when the securities mature.  Payment of the whole annual income to the beneficiaries for life would produce this loss, and diminish the principal, to the injury of the remainderman.  This method of dealing with the fund operates most equitably between the life tenant and the remainderman, in that they mutually share the advantages and losses.

The suggestion that, since the securities will not mature until the trust shall have expired, and in all probability they will not diminish in value, it would be unjust to the life tenants not to pay them all the annual income, does not, in our view, warrant treating the payments as interest only, and as belonging to the life tenants.  We take it that the repayment of premiums out of the annual income of the securities is based on the idea that the premium is an advancement of capital above the face of the obligation, which can only be realized and repaid out of the annual income or earning of the security, since the final payment will only pay an amount equal to the face of the security, and that the annual income is in fact a repayment of a part of the capital thus advanced for investment, and that such repayment is proportioned to the

number of years the security runs, or the longest period which experience in dealing with securities has shown can be allowed, with reasonable safety, for the repayment of premiums, in view of the uncertainty of the value of securities at remote periods. We deem this course in the administration of trust funds as just and equitable between the life tenant and the remainderman. It preserves the *corpus* of the estate as nearly as the changes in business affairs will permit, and affords the best protection to the life tenant, by assuring him an income equal to the current rate of interest on the fund held in trust for his benefit. *New York Life Ins. & T. Co. v. Baker,* 38 App. Div. 417, 56 N. Y. Supp. 618; *S. C.* 165 N. Y. 484, 59 N. E. 257. As stated by the supreme judicial court of Massachusetts in *New England T. Co. v. Eaton,* 140 Mass. 532, 4 N. E. 69:

"There can ordinarily be no better test of the true income which a sum of money will produce, having regard to the rights of both the tenant for life and the remainderman, than the interest which can be received from a bond which sells above par, and is payable at the termination of a fixed time; deducting from such interest, as it becomes due, such sums as will at maturity pay the premium."

*By the Court.*—The judgment is reversed as to that part which disapproves of the course pursued by the trustees in applying a portion of the annual payment received as income on the investments to the repayment of the amount advanced from the capital as premiums, and is affirmed in all other respects.