WILLIAM L. SCOVILLE v. JAMES W. BROCK.

May Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed October 9, 1908.

*Equity—Remand for Further Finding—Reception of Further
Evidence—Discretion of Master—Pleading—Allegations of
Opinion—Conclusiveness of Admission—Trusts—Guardians
—Investment of Trust Funds—Diligence of Trustee—
Corporate Stocks and Bonds—Investigation of Securities—
Evidence—Reputation of Securities—Advice on Investment
—Witnesses—Credibility—Master's Power to Modify or
Reverse Previous Finding.*

Where an appeal in chancery is remanded that the report may be
recommitted to the master for a further specified finding, on
such recommittal the master, in his discretion, may receive addi-
tional testimony.

Where, on such rehearing, additional testimony was first offered by the
orator, and neither was objection made to the taking of further
evidence, nor the master's report excepted to because thereof, the
orator cannot object on appeal that the mandate did not authorize
the taking of additional testimony.

Where, on appeal from a decision on demurrer to a bill in chancery,
it was held that a trustee could not be excused from the exercise
of ordinary care in disposing of securities that had a marketable
value, but were in fact worthless, on the ground that, if he had
ascertained the facts, he could not have effected a sale without
committing fraud, but it was not determined what knowledge was
chargeable to the trustee, and subsequently, on appeal after hear-
ing on the merits, the case was remanded that the report might be
recommitted to the master for a finding as to whether the trustee,
in holding the securities, acted with fidelity and diligence, the
question before the master on such recommittal was not, by the
holding on demurrer, limited to whether the trustee had any ex-
cuse for not selling; and the fact that the master found that

certain of the securities could have been sold above par without
the trustee incurring personal liability did not preclude an ultimate
finding exonerating the trustee.

An admission in a pleading will not be conclusive unless complete
in itself, or made complete by a necessary inference from some
other averment.

A party is not bound by his casual admission in the pleadings of what
prudence would have required of him.

Allegations in a bill in chancery that it was widely believed at the
places where certain corporations were located that they were
fraudulently organized, and that had defendant, a trustee whose
trust funds were invested in the securities of those corporations,
gone there he would have been satisfied as a prudent man that
the investments were unsafe, are not allegations of matters of
fact, but of an opinion or speculation, and their admission by the
answer does not convert the matter alleged into positive and
conclusive fact.

In a suit in chancery to charge a trustee with negligence in retaining
certain investments in corporate securities, it was for the master
to determine from all the facts the trustee ascertained, and all he
ought to have ascertained, whether he exercised the diligence of a
prudent man in retaining the securities; and the master could
treat an admission in the trustee's answer as conclusive proof of
the existence at the home of the corporations in question of the
belief that they were fraudulently organized and conducted, and
that, and the fact that the trustee went there, as conclusive proof
that he learned of such belief, and yet not accept the admission
as conclusive upon the ultimate question of whether the trustee
exercised due diligence.

Evidence considered and *held* not sufficient to raise a presumption of
a trustee's negligence in not learning facts concerning corpora-
tions, in whose securities his trust funds were invested, which ren-
dered the investments unsafe.

Where the question to be determined by a master was whether a
trustee had acted as a prudent man in continuing to hold certain
corporate securities in which his trust funds were invested, and
it was found that he had so acted, the orator cannot complain of
the master's failure to find whether the trustee could have ascer-
tained the unsafe condition of the corporations in question before
their failure, since there would still be the question whether the

trustee had exercised due diligence, which was answered by the finding as made, which is not inconsistent with the finding demanded.

The high rate of interest on corporate stock and bonds, the frequent increases of stock by the company, and the fact that such securities are not of a class sanctioned by the savings bank law, are all to be considered in determining whether a trustee acted prudently in keeping his trust fund invested in them, but those facts would not as matter of law charge the trustee with the duty of a special examination and with knowledge of the facts that such an examination would have disclosed.

Personal knowledge by a trustee regarding the affairs of private corporations in whose securities his trust funds are invested, which could be acquired only by an examination of the books and securities of the corporations and of the property covered by such securities, is impracticable.

On the question of a trustee's prudence in keeping the trust fund invested in certain securities of a foreign private corporation, which were held by many people in his locality and actively discussed by the investing public there, but in respect of which definite personal knowledge was impracticable, evidence of the reputation that the securities had in that locality- while held by the trustee was admissible, regardless of the facts that there was no active trading in them and that they were not of sufficient importance to be listed in the general market.

Even if the admissibility of evidence of such reputation depended on a reputation of a rather long standing, a reputation extending from 1881 to 1893, during which time the securities paid interest or dividends was sufficient.

The rule restricting evidence of reputation to the neighborhood of one's residence or business location does not apply to evidence of the reputation of the securities of foreign private corporations, as the knowledge of the affairs of such an institution ordinarily available to the general public of its own section is not likely to be wanting in an outlying field of investment.

A guardian's conduct in respect of the investment of his ward's funds is to be tested by the requirements of fidelity and prudence, and he need not base his action on actual knowledge of the soundness of the securities retained, but may rely on their general reputation.

The effect on the credibility of a witness of an alleged contradiction in his testimony is for the trier to determine.

On further evidence before him a master may disregard, modify, or reverse a previous finding.

The fact that a person of experience and skill confers on a question of importance with others of like information and standing, and tests his own judgment by their views and suggestions, is an indication of prudence.

Evidence that a trustee had consulted a financier about securities in which trust funds were invested is admissible on the question of the trustee's prudence in retaining the securities, though the opinion obtained was not based on a personal knowledge of matters that determine the value of such securities, nor had the financier invested trust funds in the securities in question, and though the trustee was vice-president of the bank of which the financier was president, and had no reason to suppose that his adviser knew more about the matter than he did.

In this State there is no special rule prohibiting the investment of trust funds in the stocks and bonds of a foreign private corporation; and in case of loss the trustee's liability is to be tested by the care and diligence of a prudent man in like circumstances.

APPEAL IN CHANCERY. Heard on the pleadings, master's report and exceptions thereto at the March Term, 1906, Washington County, *Rowell*, Chancellor. Decree, strictly *pro forma*, overruling the orator's exceptions, sustaining the defendant's exceptions and dismissing the bill with costs. The orator appealed. This case has been in the Supreme Court three times before. See 75 Vt. 243; 76 Vt. 385; and 79 Vt. 449.

*Elbridge R. Anderson, Edward H. Deavitt,* and *Harry C. Shurtleff* for the orator.

*Hunton & Stickney* for the defendant.

MUNSON, J. When this case was last before us, (79 Vt. 449, 65 Atl. 577, 118 Am. St. Rep. 975) it was remanded that the report might be recommitted for the master to find ''whether the defendant, in continuing to hold the securities, acted with fidelity, and with that measure of care and diligence that a

prudent man would have exercised in the same circumstances.'' The finding is for the defendant; but the orator contests its validity on several grounds.

It is said that the mandate contemplated a further finding on the case as then made up, and that the taking of additional testimony was not authorized.   The order of recommittal is not before us, but presumably it followed the mandate, and the terms of the mandate did not preclude an exercise of the master's discretion regarding the hearing.   See *Richardson* v. *Wright,* 58 Vt. 367, 5 Atl. 287.   It is said, however, in view of the circumstances and ground of the recommittal, that the mandate cannot be allowed the construction adopted by the master without doing the orator an injustice, and that the construction is therefore one that the Court cannot have intended.   But the first reception of evidence at the rehearing was on the orator's offer, and no objection was made to the taking of further testimony, nor was the report excepted to because based on the testimony so taken.

It is said that when the allegations of the bill were examined on demurrer, (76 Vt. 385, 57 Atl. 967) they were held sufficient to show that the securities the defendant received were not proper investments, and that it was his duty to sell them if a sale was feasible; that the only question before the master on recommittal, if the mandate be given a construction consistent with that decision, was whether the defendant had any excuse for not selling; and that inasmuch as the master has found that certain of the securities could have been sold above par without incurring personal liability, and had evidence before him from which he ought to have made the same finding regarding them all, his ultimate finding in exoneration of the defendant is beyond his authority.   It is said further, that, since the allegations then passed upon are now admitted by the answer, the record is the same on the merits as on the demurrer, and requires the same decision. These claims are not justified by the scope of the former adjudication.   The point of that decision was that the defendant could not be excused from the exercise of ordinary care in disposing of securities which had a marketable value but were in fact worthless, on the ground that if he had ascertained the facts he could not have effected a sale without committing a fraud.   It was not necessary to determine just what knowledge was charge-

able to the defendant on the pleadings, nor whether that knowledge was such as charged him with the duty of selling.

It is urged that the conclusion of the master is inconsistent with a conclusive admission contained in the answer. This claim is based on a consideration of the admission in connection with certain reported facts. It was alleged, in substance, in the first paragraph of the first amended bill, that the securities were in fact worthless, that it was widely believed at the places where the companies were located that they were fraudulently organized and conducted, and that if the defendant had gone to these places and made an investigation he would have been satisfied, as a man of ordinary prudence, that the investments were unsafe. The defendant, in his amended answer, admitted in general terms the allegations of this paragraph. It now appears that the defendant visited Sioux City while he was holding the securities, and went to the office of the Loan and Trust Company, and inquired how the company was getting along. The master reports that in reaching his conclusion he treated the admission as conclusive of the facts alleged, but not as conclusive of the ultimate fact to be determined.

The orator's argument is this: The defendant admits that if he had gone to Sioux City and inquired as to the standing of the Loan and Trust Company he would have ascertained its condition. The master finds that he did go to Sioux City and make the inquiry. So he must either have ascertained the facts, or been negligent in his investigation. Upon this reasoning, the fact that the defendant visited Sioux City gives to the admission an effect at variance with the master's conclusion. The question is whether the orator is entitled to have the admission given a conclusive effect as regards the ultimate fact.

We think the orator's argument is without substantial basis. The allegation of what the defendant would have discovered is not the allegation of a matter of fact, but of a matter of opinion or speculation. It cannot be said that the existence to a considerable extent in the community generally of the unfavorable belief was something which one making a diligent inquiry on the ground must necessarily have discovered. The admission of an allegation of this nature cannot convert the matter alleged into a positive and conclusive fact. Moreover, the matter alleged, if it be treated as a fact, is but one of several

elements to be considered in determining the question submitted. The defendant might have learned of the unfavorable views entertained by a portion of the community, and still have become satisfied on reasonable grounds that the company was solvent and well managed. The final allegation, as to how the ascertainable information would have affected the defendant as a prudent man, is but the raising of one speculation on another. The allegation involves, not only what the defendant would have learned, but the effect that the things learned, when considered in connection with other information, would have had upon his judgment as a prudent man. Furthermore, it must be kept in mind that these matters are made dependent upon an event that is not alleged to have occurred, and are admitted as alleged. Now an admission will not be conclusive unless complete in itself or made complete by a necessary inference from some other averment. See *Schwarz* v. *Sears,* Walker Ch. (Mich.) 19. This completeness cannot be predicated of an admission which depends for its force on the finding of a further fact from the evidence. It should also be noticed that if the claim now made by the orator is sustained the defendant will be made liable on a different ground from that set up in the bill; for the bill assumes that the defendant did not visit Sioux City to make inquiry,. and charges him with negligence in that respect. These considerations all point to the inconclusiveness of the admission regarded as a pleading, and if not conclusive under the rules of pleading it has no conclusive effect. A party is not bound by a casual admission of what prudence would have required of him. *Stowe* v. *Bishop,* 58 Vt. 498, 3 Atl. 494, 56 Am. Rep. 557. It was for the master to say, from all the facts the defendant ascertained and all he ought to have ascertained, whether he exercised the care and diligence of a prudent man in retaining the securities. He could treat the defendant's admission as conclusive proof of the existence of the belief stated, and that and the fact of his visit as conclusive proof that he learned of the belief, and yet not accept the admission as conclusive upon the ultimate fact submitted for his determination.

The orator insists that the result must be the same if the admission is rejected. It is argued that the presumption of negligence applies to every act and default of the defendant in relation to the investments, and that the finding as to the par-

ticular act or default cannot be for the defendant without evidence rebutting the presumption, and that unless the defendant can be justified as to each particular of his conduct the conclusion of the master cannot be sustained. We shall examine the orator's objections upon this ground without inquiring as to its correctness.

It is said that there was no testimony tending to show that the defendant could not have learned the facts while at Sioux City, and that in the absence of such evidence it is to be presumed that he could have learned them, and that his failure to learn them charges him with negligence. It does not appear when the defendant's visit to Sioux City was made, and we treat the case as though it occurred shortly before the failure. The report shows that when the defendant went to the office of the Loan and Trust Company and inquired how they were getting along, he was given a sworn statement of the company which showed it to be in a safe and prosperous condition, and that he received no other information, and learned nothing that caused him to suspect that the affairs of the company were not as shown by the statement. It is intimated that the defendant should have sought an interview with the officials of the company in their private room, and made his inquiries there. But the fact that the financial statements issued by the company were false is enough to support a conclusion that the defendant would have learned nothing inconsistent with the statements by inquiries in the director's room. It is said further that if the defendant had made inquiries in disinterested quarters he could not have failed to learn of the unfavorable rumors then rife among the business men of Sioux City. This assumption is based upon the testimony of Mr. Wing, one of the committee which investigated the affairs of the Loan and Trust Company a few months after the failure, who says he then learned from a few conservative men that they had anticipated the failure some months before it occurred. This evidence, if accepted as legitimate, does not go far enough to support the orator's claim. Suspicions readily asserted after the failure may not have been freely expressed, or even well defined, before the event. It is said that the defendant might easily have learned that these companies were formed for the purpose of booming Sioux City and financing other enterprises devoted to the same end. If this had been reported as a

fact and as known to the defendant, it would not have changed the legal aspect of the case. It is said that the public records would have shown that the Loan and Trust Company was not so organized as to make its stockholders liable to assessment, and that the defendant is chargeable with negligence for not ascertaining the fact. There is nothing before us from which we can say what the public records would have shown in this respect, and it is not necessary to inquire how the existence of a record notice of this fact would have affected the duty of the defendant or the finding of the master.

It is claimed further that enough appears to charge the defendant without regard to the presumption. The orator insists that he was entitled to have the master determine whether the defendant could have ascertained the real facts concerning the Loan and Trust Company before the failure, and that the findings made and other facts appearing from undisputed evidence would have compelled a finding that he could have ascertained them, and that this would have rendered the conclusion arrived at impossible. It appears that representatives of the holders of the debenture bonds visited Sioux City after the failure to make an investigation, and were refused permission to examine the books of the company, and thereupon applied to the court for an order in that behalf, and that after the application had been made the officials of the company permitted the examination. It was then found that the company originally placed in the hands of the trustees for the bondholders first class mortgages sufficient to secure the payment of the bonds, but that during the year or two preceding the failure the company had withdrawn these mortgages and substituted other securities having a face value largely in excess of the bonds issued, but actually worth only a small per cent of the issue. These facts were found from the testimony of Mr. Wing, who was asked the following question in the course of his examination: "From your investigation and what you had to do in order to get at the facts you discovered, did you make up your mind * * whether those facts could have been discovered before the failure?" and who replied as follows: "I suppose they could have been discovered if you had gone there and insisted upon an examination of what was behind the debentures." After reciting the above facts, and upon a consideration of this evidence, the master says:

"Whether or not these facts could have been ascertained by the defendant before the failure the master cannot determine, but (he) does find that the defendant could not have ascertained these facts without personally going to Sioux City, or sending some competent person there, and making a determined effort in that direction, * *" The orator cannot complain of the failure to make a more definite finding. Suppose the master had found that the defendant could have ascertained these facts before the failure by a "determined effort" of some designated character,—the question would still have remained whether that course was required of him in the exercise of due diligence. This the master has covered by his concluding finding, and the finding called for would not have been inconsistent with it.

The master recites in this connection, as one of the things considered, the fact that nothing had come to the knowledge of the defendant to put him on inquiry. The orator contends that this is an unwarranted assumption, and suggests as matters that ought to have put the defendant on inquiry, the large rate of interest, the frequent increases of stock, and the fact that the investments were not of a class sanctioned by the Savings Bank law of this State. These were facts to be considered by the master in determining whether the defendant acted prudently in retaining the securities, but are not facts which can be said as matter of law to charge the defendant with the duty of a special examination and with knowledge of the facts that such an examination would have disclosed. The other things suggested are matters which the orator assumes could have been learned by proper inquiry when the defendant was at Sioux City, and these properly belong and have been considered in another connection. We find nothing in the report, upon this or other points, to indicate that the master was influenced in reaching his conclusion by any misapprehension as to the legal rules applicable to the case.

It is argued further that the law required the defendant to make a personal investigation of the affairs of the companies, unless it was actually necessary to rely upon others, and that there is no finding that this necessity existed. The principle of the decision in *McCloskey* v. *Gleason*, 56 Vt. 264, 48 Am. Rep. 770, is appealed to in support of this position. In that case, an administrator intrusted the collection of a mortgage to an agent,

who .appropriated the money collected to his own use, and was suffered to retain it four years without any special effort being made for its recovery. That case called for an ascertainment of the rule applicable to a trustee making collections through an agent. This case relates to the duty of a trustee who holds the stock or bonds of a corporation as an investment. It is obvious that the field of .duty to be considered here is different in character and scope. A personal knowledge of the matters upon which the value and safety of these investments depended could have been acquired only by an examination of the books and securities of the company and of the property covered by the securities. It must be conceded that such an investigation by an individual holder is impracticable. Then, if investments of this character are to be sanctioned, other methods of reaching a conclusion as to their safety must be permitted.

As bearing upon the question of defendant's prudence, the master received evidence of the reputation which these securities had in Montpelier and vicinity during the time they were held by the defendant. The orator insists that this evidence was inadmissible, because the reputation was that of securities not listed in the general market nor the subject of active trading; because it was not general in the sense of being widespread, and did not embrace the locality where the corporation did business; and because it arose at a place remote from the location of the corporation and among people who had no knowledge of the facts on which the value of the securities depended.

As regards the necessity of resorting to evidence of this character, no distinction can be made between these securities and others of sufficient importance to be listed in the general market; and its admissibility cannot be made to depend on the test of active trading. It is found that a large amount of these securities were held in Montpelier and vicinity, and the orator's brief says it is apparent from the evidence that there was, in a small way, an exchange market for them. The fact that this local market was remote from the location of the corporation cannot be of controlling importance in these days of easy communication and extended commercial relations. The ease with which one living at a distance from an institution in which he is interested can keep himself informed of whatever may become known to the public of its immediate vicinity, is well un-

derstood. Some of the facts reported indicate a special connection between these two localities. Mr. Cummings, a resident of Montpelier or the near vicinity, was a director of one of the corporations in question, and his son was the cashier of another. Mr. Ellis, a resident of Montpelier and a director of the First National Bank of Montpelier, who was interested in selling the securities, was accustomed to visit Sioux City two or three times a year. There was evidence tending to show that the usual sworn statements of the financial condition of these corporations accompanied the several remittances of income, and these are an important factor in determining the judgment of actual and prospective investors wherever located. The case also discloses some indications of the extent and activity of the local interest. There was evidence that the securities were sold at the First National Bank by its cashier; that they were owned and recommended by prominent local financiers who were interested solely as investors; that they were made the subject of frequent discussion and inquiry by persons who held them and persons who had money to invest; that this was so common with the people who visited the office of Mr. Wing, a gentleman not interested in the securities, that he endeavored to keep himself informed regarding them in order that he might answer inquiries. So the case presented is that of securities regarding which definite personal knowledge was impracticable, held by a considerable number of people in the same locality, and actively discussed by the local investing public.

It is said however, but without referring us to the cases, that the courts which admit general reputation in excuse of a loss require that it be a reputation of rather long standing, having its origin in the continued high standing of the company for a considerable length of time. The admission of the reputation of these securities could hardly be held error under the rule as stated. The investments were made by the orator's father, who died in 1885; the debentures of the Loan and Trust Company having been purchased in 1881, and the other holdings at dates not given; and all of them paid interest and dividends regularly until the spring of 1893. It is said that these courts require that the reputation be that of a corporation so situated that something pretty definite, although perhaps not in detail, can be known by the general public concerning the character

of its business and resources; and it is remarked in this connection that the reputation of these securities in the locality where the companies did business might have been of some value.    The ordinary terms restricting evidence of this nature to the neighborhood of one's residence or business location are not applicable here.    See Wig. § 1616.    We have already indicated our opinion that the knowledge of the affairs of an institution of this character ordinarily available to the general public of its own section is not so likely to be wanting in an outlying field of investment as to require that a distinction be made between the two localities in this respect.    It is clear that the difficulty in this instance was one regarding which proximity gave no special advantage, and that if the reputation shown had been that existing in the immediate neighborhood of the corporations it would not have been a reputation based on the opinions of those who had any definite knowledge of their actual standing.

But the orator does not concede the authority of these cases, and insists that evidence of the reputation of the securities held by a guardian is not admissible in his defence unless that reputation is shown to have been founded on a knowledge of the facts. This is in line with the orator's main contention, that a guardian's action must be based upon actual knowledge and not upon mere beliefs.    But in the view adopted by the Court, the question is one of fidelity and prudence, and we see no reason why a reputation which satisfies the ordinary tests should not be held admissible upon that question in cases involving investments of this character.    Reputation is an established means of proving solvency or insolvency when collaterally in question. But a reputation regarding solvency is merely a consensus of individual opinion, and one man's opinion of the solvency of another is ordinarily based upon a variety of general indications, and not upon an actual knowledge of the facts which constitute solvency.    We think the defendant could properly take this reputation into account in considering the advisability of retaining these securities, and that he had a right to have it appear in evidence, to be given such weight as the master might consider it entitled to.

The master received evidence of the experience and standing as a financier of Homer W. Heaton, deceased, President of the Montpelier Savings Bank and Trust Company at the time in

question; and permitted the defendant to testify that he consulted Mr. Heaton about the securities, and was told that they were good investments, and relied partly on this advice; and from this testimony the master has found the facts to be as stated. It is objected that the statement was in direct contradiction of the defendant's previous testimony; that the finding is inconsistent with a former finding; that the evidence was hearsay; and that the opinion shown was not based on a knowledge of the facts. The effect of the claimed contradiction on the credibility of the defendant was for the master to determine. With further evidence before him, the master could disregard, modify or reverse a previous finding. If the inquiry and advice were legitimate evidence on the question at issue, the testimony was not objectionable as hearsay. We think that an opinion regarding securities of this class may be admissible as evidence of prudence, although not based on a personal knowledge of the matters which determine their value. Mr. Heaton's experience and position gave him a knowledge of the subject not possessed by people in general. He was the president of a bank located in a section where these securities were common,—a man accustomed to investing trust funds and familiar with the rules by which the value of a security is tested, and one whose attention had been directed to these particular securities by his relations to the community in which they were held. It was not necessary to the competency of the evidence that he should have invested trust funds in these very securities. The fact that he was shown by the event to have been misled by the information available for his guidance does not affect the question of admissibility. Nor is the objection aided by the suggestion that the defendant was himself vice-president of the same bank, and had no reason to suppose that his adviser knew more about the matter than he did. The fact that a person of experience and skill confers with others of like information and standing upon a question of importance, and tests his own judgment by their views and suggestions, is certainly an indication of care and prudence.

The claims of the orator amount to this. The securities were in fact worthless, as shown by the event. The facts could have been ascertained before the failure by a sufficient investigation. It was the defendant's duty to know the facts, as distinguished from opinions or any reputation founded on opinion. This duty

covered not merely the facts bearing indirectly upon the standing of the companies, but the very facts upon which the value of the securities depended. The defendant was not confined to any particular securities, and if he could not learn the facts upon which the safety of these depended, he was not justified in retaining them. He continued to hold them without knowledge of the facts regarding them, and is therefore liable for the loss. This view ignores the rule which makes the diligence of a prudent man the test of liability, and charges the guardian whenever, it becomes apparent from subsequent events that an exhaustive investigation, seasonably undertaken, would have secured the safety of the fund. It is obvious that such an investigation in the case of every individual holder of the stock or bonds of a corporation affording extended opportunities of investment is impracticable; that the requirement of it would exclude all securities of that character from the field of investment available to trustees; and that it cannot consistently be made a special and exclusive test of liability in a jurisdiction which recognizes such securities as proper to be held in the exercise of due discretion.

The argument of the orator is apparently influenced by a belief that securities of this class ought not to be recognized as proper holdings for a trust fund. It is not necessary to enter upon a discussion of the views entertained upon this subject in different jurisdictions. The submission of the question now passed upon by the master was in itself a determination that in this State there is no special rule prohibiting the investment of trust funds in the stock and bonds of private corporations, even though located without the State, and that in case of loss the question of liability is to be tested by the general rule embodied in the mandate. If it be considered that the interests of beneficiaries now require the adoption of special rules determining the classes of securities proper for the investment of trust funds, the change should be made by the Legislature and not by the Court. See *Brown* v. *French,* 125 Mass. 410, 28 Am. Rep. 254; *Lamar* v. *Micou,* 112 U. S. 452, 5 Sup. Ct. 221, 28 L. Ed. 751.

*Decree affirmed and cause remanded.*