*In re* BUHL'S ESTATE.

WALKER *v.* BUHL.

1. TRUSTS—DUTY OF TRUSTEE.
    When a trust fund passes into the hands of a trustee it comes impressed with the double duty, to so invest it that it can be turned over at the expiration of the trust period without loss, and to secure an income therefrom.

2. SAME—GOOD FAITH.
    A trustee must act honestly and faithfully in what he believes to be the best interest of the *cestui que trust.*

3. SAME—AUTHORITY OF TRUSTEE AS TO INVESTMENTS.
    A trustee has not unlimited authority to invest as an ordinarily prudent man would invest his own, but he must take such risks only as an ordinarily prudent man would take who is trustee of the money of others; the entire element of speculation must be removed.

4. SAME—INVESTMENT IN PRIVATE CORPORATION—LIABILITY OF TRUSTEE FOR LOSS.
    A reasonable investment by a trustee in dividend-paying stocks and interest-bearing bonds of a private business corporation may be permitted when the corporation has acquired, by reason of the amount of its property and, the prudent management of its affairs for a considerable period of time, such a reputation for permanence and stability as to command universal confidence, and so that careful and intelligent persons, familiar with such corporations and the manner in which their business should be conducted, commonly invest their own money in them as a permanent investment, and not for the primary purpose of securing a considerable income therefrom.

5. SAME.
    *Held,* under the circumstances of this case, that the trustee was relieved from liability for loss occasioned by the investment of trust funds in the preferred stock of a private corporation.

Error to Wayne; Codd (George P.), J. Submitted

For authorities dealing with the question of personal liability of a trustee for losses to trust estate for investments, see comprehensive notes in 44 L. R. A. (N. S.) 873.

April 28, 1920.   (Docket No. 10.)   Decided July 20, 1920.

Bryant Walker presented his final account as surviving trustee under the will of Frederick Buhl, deceased. The account was disallowed in part, and he appealed to the circuit court. Judgment, on a directed verdict, allowing the account in full. Hazel Buhl and Harry C. Buhl, beneficiaries, bring error. Affirmed.

*Stevenson, Carpenter, Butzel & Backus*, for appellants.

*Walker & Spalding*, for appellee.

SHARPE, J.   Frederick Buhl, of Detroit, by his last will and testament appointed Charles A. Kent and Robert Hosie executors and trustees. Bryant Walker was therein named to fill any vacancy, and acted after the death of Mr. Hosie. Mr. Kent is now also deceased, and Mr. Walker is acting as surviving trustee. The will contained the following provision:

"The remaining property given to said trustees they shall hold in trust for said three children, Frederica, Grace and Harry, giving to each an equal share in the net income during their respective lives. The trustees shall also give to each child the net income of the property specifically set apart to him or her. They shall have power to sell and convey said last named property only to re-invest the proceeds and then only with the consent in writing of the child for whose benefit such property is appropriated. The other property they may sell and convey in their discretion, for the purpose of paying debts of my estate, or for the purpose of re-investment.

"They shall have full charge of all the real estate hereby conveyed with all powers necessary to protect it and make it as productive as possible. They shall pay all taxes and assessments. They shall keep the

buildings insured; they may repair and rebuild when necessary; they may lease at their discretion and collect all rents or other income; they shall have like control over the personal property conveyed.

"Said net income shall be paid to each child in monthly or quarterly payments."

Mr. Walker's account, filed March 5, 1918, showed that investments theretofore made in the preferred stock of the Farrand Organ Company, a Michigan corporation, had resulted in a loss, owing to the failure of that company. Such investments had been made by Mr. Kent, $5,000 in 1903, and $1,120 in 1910. The probate court charged the trustee with these sums and interest thereon after the date to which dividends had been paid. On appeal to the circuit court, the trial judge directed a verdict in favor of the trustee, holding as a matter of law that he was not chargeable therewith. The beneficiaries under the trust fund appeal.

In the brief for appellants it is said:

"The only question involved is whether trustees holding a fund to invest for the benefit of a *cestui que trust* have a right to invest the trust fund in stock of a private corporation."

Counsel agree that this precise question has never been determined by this court, though both claim that expressions in some of our decisions are at least suggestive of the opinion of the court on the question presented. In *Re Grammel's Estate*, 120 Mich. 487, in considering the duty of a guardian in handling the funds of his ward, Mr. Justice HOOKER said:

"A guardian is required to use care and diligence in handling the property of his ward. * * * Ordinarily it is the duty of guardians to invest funds with a view to their safety and increase. In so doing they are bound to the observance of fidelity, and such diligence as men of ordinary intelligence observe in managing affairs of their own."

In *Michigan Home Missionary Society* v. *Corning,* 164 Mich. 395, Chief Justice OSTRANDER said:

"It is general doctrine, accepted everywhere, that a trustee must show the utmost good faith.  He must exercise in the execution of the trust the degree of care and diligence which a man of ordinary prudence would exercise in the management of his own affairs. In respect to the investment of trust funds, in the absence of express directions from the settlor and of statute directions, courts have not infrequently been called upon to determine whether particular investments evidenced the exercise by the trustee of ordinary prudence.  However conflicting in some respects the decisions may appear to be, in one respect they are reasonably uniform.  It is a generally accepted rule that it is not prudent to invest trust funds in unsecured notes of an individual or of a partnership. We have found no decision which announces a contrary rule where the trust contemplated an investment of a permanent nature.  This rule condemns the defendant trustees, and, if applied, obliges them to account to the *cestui que trust* for the fund.  *  *  *

"It may be added, in conclusion, that we are not prepared to hold that there is authority, statute or other, for substituting, in the first instance, the discretion and prudence of a court for that of a trustee charged by the terms of a will with a proper investment of funds."

Mr. Justice BIRD, in a concurring opinion holding the trustee liable, said:

"I concur in the conclusion reached in this case by Mr. Justice OSTRANDER, but I am of the opinion that the delinquency which should charge the trustees personally with the payment of the trust fund is their undue renewals and extension of the note, and their failure to collect it at the proper time."

In *Houghteling* v. *Stockbridge,* 136 Mich. 544, 554, when referring to investments made by an executor, it is said:

"It will scarcely be claimed that he should have invested the trust funds of the estate in his hands in a

purchase of this stock." (That of a private corporation.)

In some jurisdictions, the discretion to be exercised by a trustee is regulated by statute or by decisions of the court and confined within strict limits. The early English cases seem to have been decided on the test of the good faith of the trustee, it being said by Lord Hardwicke, in *Knight* v. *Earl of Plymouth*, 1 Dick. 120 : s. c. 3 Atk. 480, "if there is no *mala fides*, nothing wilful in the conduct of the trustee, the court will always favor him."

In later years, due, as some of the text-book writers suggest, to the increase of government securities, these courts disapproved of investments in other than such securities or mortgages on real estate. By act of parliament (22 and 23 Vict. chap. 35, and 24 Vict. chap. 38), trustees were authorized to invest in stock in the bank of England or of Ireland, or upon mortgage on freehold or copyhold estates, as well as in the public funds. Lewin on Trusts (7th Ed.), pp. 282, 283, 287.

The exercise of good faith and sound judgment seems to have been the test in New York in the early days, but that court, in *King* v. *Talbot*, 40 N. Y. 76, in an exhaustive opinion written by Judge Woodruff, while asserting that the "inquiry, therefore, is * * * Has the administration of the trust created * * * been governed by fidelity, diligence and prudence?" and adding that "the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management as, in general, prudent men of discretion and intelligence in such matters employ in their own like affairs," holds that:

"This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, everything that does not take into view the nature and object of the trust, and the con-

sequences of a mistake in the selection of the investment to be made."

He further says it is not "within any just idea of prudence to place the principal of the fund in a condition in which it is necessarily exposed to the hazard of loss or gain, according to the success or failure of the enterprise in which it is embarked." While conceding that men of the highest prudence do invest their personal funds in the stocks of private corporations, he suggests that this is done in the hope of profitable returns and, while they may lawfully so invest their private funds "at hazard; in the affairs of a trust they may not." He concludes that an investment in the stock of certain railroads and a canal company was not permitted by the terms of the trust.

We have referred to and quoted from this case at length because it may well be said to have established what is known as the New York rule, which has been substantially followed by courts of last resort in several States. *Hemphill's Appeal,* 18 Pa. St. 303: *Pray's Appeal,* 34 Pa. St. 100; *Robertson* v. *Robertson,* 130 Ky. 293 (113 S. W. 138); *White* v. *Sherman,* 168 Ill. 589 (48 N. E. 128); *In re Allis' Estate,* 123 Wis. 223 (101 N. W. 365); *Simmons* v. *Oliver,* 74 Wis. 633 (43 N. W. 561); *Tucker* v. *Tucker,* 33 N. J. Eq. 235.

The supreme court of Massachusetts had occasion to pass on the question at an early day in the case of *Harvard College* v. *Amory,* 9 Pick. 446, and therein stated what is spoken of as the Massachusetts rule. In that case, an investment of a trust fund in stock of an insurance company was held to be a proper exercise of discretion by a trustee. At pages 460, 461, the court said:

"If the public funds are resorted to, what becomes of the capital when the credit of the government shall be so much impaired as it was at the close of the last war?

"Investments on mortgage of real estate are not always safe. Its value fluctuates more, perhaps, than the capital of insurance stock.

"Again, the title to real estate, after the most careful investigation, may be involved, and ultimately fail, and so the capital which was originally supposed to be as firm as the earth itself, will be dissolved.

"All that can be required of a trustee to invest, is, that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested."

Since that decision, investments of trust funds in dividend-paying stocks and interest-bearing bonds of corporations other than municipal have been approved in the following cases: *Lovell* v. *Minot*, 20 Pick. 116; *Brown* v. *French*, 125 Mass. 410; *Dickinson's Case*, 152 Mass. 184 (25 N. E. 99, 9 L. R. A. 279) ; *Kimball* v. *Whitney*, 233 Mass. 321 (123 N. E. 665).

In commenting on the rule laid down in *Harvard College* v. *Amory*, the court in the last named case said:

"Good faith and sound discretion, as these terms ought to be understood by reasonable men of good judgment, were thus made the standard by which the conduct of trustees is to be measured. That is a comprehensive principle. It is wide in its scope. It is not limited to a particular time or a special neighborhood. It is general and inclusive, so that while remaining itself fixed, it may continue to be a safe guide under new financial institutions and business customs, changed commercial methods and practices, altered monetary usages and investment combinations. It avoids the inflexibility of definite classifications of securities, it disregards the optimism of the promoter, and eschews the exuberance of the speculator. It holds fast to common sense and depends on practical experience. It is susceptible of being adapted to whatever

conditions may arise in the evolution of society and the progress of civilization."

The Massachusetts rule has been followed in *Scoville* v. *Brock,* 81 Vt. 405 (70 Atl. 1014) ; *Gilbert* v. *Kolb,* 85 Md. 627 (37 Atl. 423) ; *Kimball* v. *Reding,* 31 N. H. 352 (64 Am. Dec. 333) ; *French* v. *Currier,* 47 N. H. 88; *Smyth* v. *Burns,* 25 Miss. 422.

A consideration of these decisions, and the reasoning of the judges on which they are based, leads us to hesitate about laying down any definite rule as to the class of securities in which trustees may legally invest. We are unwilling to say that such investments can only be made in Government, State, or municipal bonds or loans on real estate mortgages, nor do we hold that an investment in these under all circumstances would relieve the trustee from liability in the event of loss. Neither do we say as a matter of law that investment in stocks and bonds of other corporations is always to be permitted. The variety of investments now open to the public, many of them seemingly permanent and safe, and in which so many careful and prudent men invest their own money, renders it unwise to attempt to define the securities in which such investments can be made.

When such a fund passes into the hands of a trustee, it comes impressed with a double duty, *first,* to so invest it that it can be turned over at the expiration of the trust period without loss, and, *second,* to secure an income therefrom. He must act honestly and faithfully and in what he believes to be the best interest of the *cestui que trust.* He must exercise a sound discretion. He is bound to proceed with diligence in investigating the nature of the proposed investment and to use such care in deciding as, in general, prudent men of intelligence and integrity in such matters employ in their own affairs when making a permanent investment in which the primary object is the preservation

of the fund and the secondary one that of obtaining an income therefrom. He must not permit himself to take the hazard of an investment with the hope of largely increasing the fund as he might, perhaps, do in the prudent management of his own estate. The entire element of speculation must be removed. He must at all times remember that he is handling a trust fund, the care of which has been entrusted to him in reliance on his integrity, fidelity and sound business judgment.

A reasonable investment in dividend-paying stocks and interest-bearing bonds of a private business corporation may be permitted when the corporation has acquired, by reason of the amount of its property and the prudent management of its affairs for a considerable period of time, such a reputation for permanence and stability as to command universal confidence, and so that careful and intelligent persons, familiar with such corporations and the manner in which their business should be conducted, commonly invest their own money in them as a permanent investment, and not for the primary purpose of securing a considerable income therefrom. A trustee has not unlimited authority to invest as an ordinarily prudent man would invest his own; he must take such risks only as an ordinarily prudent man would take who is a trustee of the money of others. In making such an investment, he always assumes the risk of a searching scrutiny in a court of equity as to the diligence employed and sound judgment exercised by him in the transaction. He must always bear in mind that the primary object of the creation of the trust is not, ordinarily, accumulation but the preservation and perpetuity of the fund until the time for its distribution arrives, and he must make no investment by which this object may be at all likely to be defeated.

We therefore hold that an investment by a trustee

in the preferred stock of a private corporation may be made under such circumstances as will relieve him from liability in case of loss.

The judgment appealed from is affirmed, with costs to the trustee payable out of the trust estate.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.