GEORGE D. HOLMES *et al.*

*v.*

W. H. McDONALD *et al.*

*Opinion filed February 21, 1907—Rehearing denied April 4, 1907.*

1. CORPORATIONS—*directors or trustees are liable for loss for failure to use ordinary care.* Directors, trustees and officers of a corporation are bound to manage the affairs of the corporation with at least ordinary care and prudence, and are liable for a loss occasioned by their failure to do so.

2. VOLUNTARY ASSOCIATIONS—*when trustees are responsible as ordinary trustees rather than as directors of corporation.* Men of responsibility and business sagacity and standing who permit the use of their names as trustees of a voluntary association for the purpose of conducting a savings bank, are charged with duties and liabilities partaking more of the character of ordinary trustees than

of bank directors or other officers of an incorporated company, and must use proper care and caution to see that the money of depositors is safely deposited or invested.

3. SAME—*when trustees are liable for loss of deposits.* Men of business ability and standing who permit the use of their names as trustees of a voluntary savings bank association, and who, had they given proper attention to affairs of the association, might readily have learned that the affairs were being mismanaged and that the banking firm where the deposits were kept was on the verge of insolvency, are guilty of such negligence as renders· them liable to the depositors, notwithstanding a rule of the association exempting trustees from liability for losses except such as result from their willful misconduct.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

Plaintiffs in error filed a bill in the superior court of Cook county against defendants in error and other trustees of the Chicago Society for Savings, praying an accounting from such trustees and for the appointment of a receiver for the trust property.

Early in 1899 defendants in error, together with George B. Lathrop, A. R. Moulton, G. A. Armstrong, and other persons, entered into a written agreement for the organization of a society for savings, of which society any person might become a member, in the manner therein provided, by signing an agreement which stated, among other things, the following: "That we, the subscribers hereto, in consideration of the benefits and advantages accruing to ourselves and to each other, do hereby associate ourselves together under the name and style of 'The Chicago Society for Savings,' for the purpose of conducting the business of a savings bank in the city of Chicago. * * * We hereby agree to be bound and governed by the following articles of agreement." Article 1 provides that any person might become a member by signing the articles and depositing not less than one dol-

lar.  Article 2, that the affairs of the society should be under the immediate control of a board of trustees of eleven members.  Article 3, that the first board of trustees should be composed of the defendants in error and six others therein named.  Article 5, that "the trustees, undertaking their duties without the expectation of emolument and pledging themselves to an upright and conscientious discharge thereof, are not to be held responsible for any loss which may happen, from whatsoever cause, except their willful, corrupt misconduct, in which case those trustees only who are present and guilty of such misconduct shall be answerable for the same."  Article 7 provided that each member should be bound by and possess no rights enforceable other than in conformance with the rules and regulations.  A set of rules was adopted for the investment of funds, and a resolution was carried that in the investment of the funds "no officer or committee be allowed to go outside of these rules."  The agreement was signed by eleven persons, including defendants in error herein, and Lathrop, Moulton, Armstrong, P. G. Gardner, B. H. Winchell and J. A. Montgomery.  At the first meeting of the trustees McDonald was elected president, Gore vice-president, Lathrop treasurer and Armstrong secretary.  McDonald, Moulton and Gardner were also made members of the investment committee, whose duty it was to pass on loans and investments.

For several years prior to May, 1902, Moulton, Lathrop and Armstrong had been engaged in the banking business in Chicago.  They conceived the idea of organizing the Chicago Society for Savings on the basis of the articles of agreement.  Apparently they were responsible for getting the eight other trustees interested.  Each of the defendants in error took the witness stand, and in substance testified that while they assisted in organizing the society they took no part in its affairs afterwards and did not investigate its securities or make any attempt to examine its books; that Moulton, Lathrop and Armstrong conducted its affairs in

connection with their private bank. Some of the defendants in error seem to have gone into the society to accommodate Moulton, Lathrop and Armstrong. So far as the record shows there were only a very few meetings of the trustees held, and those were at the time it was first organized, in January, 1899. Some of the defendants in error state that they thought they were only going to help organize and that after that they would cease to be members, but there is nothing in the record to indicate that they took any steps to find out whether they were still trustees. The banking business of the firm of Moulton, Lathrop & Co. does not seem to have greatly prospered although starting out with reasonable hopes of success. Later on, Moulton, Lathrop & Co. arranged to go into the business of stock brokerage, and Gore testified that he then advised them to close their banking business, not thinking it wise to run a banking and a stock brokerage business together. They told him they were closing up the business of the society, and later one of their clerks told him that it was closed.

Shortly after the organization of this society plaintiff in error George D. Holmes signed the articles of agreement and became a depositor. On May 16, 1901, there was a balance of $755 to his credit. Lida L. Jones became a depositor in July, 1900, and had a credit balance of $40. Violet Quincey, a minor, became a member, through her father, in February, 1900, and had a balance to her credit of $22.50. Lathrop, the treasurer of the society, kept its deposits in the banking house of Moulton, Lathrop & Co., although some of them were invested for a time in bonds of the village of Wilmette and the Chicago City Railway Company, but later these bonds were taken up and the money again deposited with Moulton, Lathrop & Co. From time to time the depositors withdrew in whole or in part, and matters continued in this condition until May, 1902, when Moulton, Lathrop & Co. were adjudged bankrupt, the deposits of plaintiffs in error being still with the firm. Holmes was a bookseller for

McClurg & Co. and had been a depositor with Moulton, Lathrop & Co. before he became a depositor in this society. He knew the members of the firm and considered them responsible. He was told by Armstrong that the others were men of reputation and good business ability. The business connections of some of them were named. He was led to understand that they were men in whom he could place confidence. The other two depositors knew nothing personally of the trustees other than Lathrop, Moulton and Armstrong.

The bill here in question, among other things, alleged that the money deposited by plaintiffs in error with said society was by said trustees carelessly and negligently left on deposit with the bank of Moulton, Lathrop & Co., and prayed that the trustees might be compelled to account for the money received by them as such trustees and decreed to pay the amount of said deposits. After the pleadings had been settled the case was referred to a master, and he found the equities with the defendants in error. The chancellor sustained exceptions to the master's report, and entered a decree that the trustees, by allowing the society's funds to remain uninvested and on deposit with Moulton, Lathrop & Co., were guilty of gross negligence in failing to perform their duties, and that they were jointly and severally liable for the amount of deposits here in question. From this decree an appeal was prosecuted to the Appellate Court for the First District, where the judgment was reversed and the cause remanded, with directions to enter a decree dismissing the bill for want of equity. That court granted a certificate of importance and the case was then brought to this court by writ of error.

CHARLES H. BLATCHFORD, for plaintiffs in error:

The articles of agreement of the Chicago Society for Savings created a trust of which defendants in error were trustees, having legal title to the trust *res* or deposits, and holding them for the benefit of plaintiffs in error.

It was the duty of defendants in error, as trustees, to investigate and keep in touch with the affairs of their trust and to render an accounting when called upon to do so. Perry on Trusts, (4th ed.) sec. 266; *Lehman* v. *Rothbarth,* 159 Ill. 270; 28 Am. & Eng. Ency. of Law, (2d ed.) 1065.

The fact that the trust *res* was small does not authorize the trustee to decrease his vigilance in guarding the interests of his *cestui.*

Article 5 of the agreement does not relieve defendants in error from liability, because they failed to bring themselves within its terms by showing that they had discharged their duties as trustees in an upright and conscientious manner, which is the proper construction of the article to accomplish the ends of justice. *Rae* v. *Meek,* 14 Ill. App. 558; *Massie* v. *Belford,* 68 Ill. 290; *McCarty* v. *Howell,* 24 id. 341; *Robinson* v. *Stowe,* 39 id. 568.

RANDALL W. BURNS, and AYERS & AYERS, for defendants in error:

Directors or trustees of banks cannot be held liable for losses to depositors except where they have been guilty of actual misconduct, or have been warned that the affairs of the bank are in danger and despite such warning have not acted. This is the gross negligence that would render them liable. *Briggs* v. *Spaulding,* 141 U. S. 132; *Smith* v. *Prattville Manf. Co.* 29 Ala. 503; *Smith* v. *Cornealius,* 41 W. Va. 70.

The burden of proof of fraud, combination or gross negligence, to render trustees personally liable, is upon the party making the charge, and proof must be clear and manifest. *Booth* v. *Robinson,* 55 Md. 419.

The mere failure of the defendants in error to attend meetings of the board will not charge them for losses occasioned by insolvency of the treasurer, as such failure to attend was not a contributory cause. *Warner* v. *Pennoyer,* 61 U. S. App. 372.

Mr. Justice Carter delivered the opinion of the court:

From the facts shown by the record, as indicated by the above statement of the case, it is manifest that this decision depends very largely upon the construction to be given to article 5 of the agreement, heretofore set out verbatim. The society was created by these articles of agreement. Defendants in error, with others, were made trustees thereunder. Each of the plaintiffs in error signed the agreement and became a party to it. It is admitted that there is no evidence in the record that defendants in error were guilty of "willful, corrupt misconduct." Did they carry out their agreement in article 5, wherein they pledged "themselves to an upright and conscientious discharge" of their duties as trustees? They knew that they had been elected as trustees. For over two years they evidently paid no attention to the business of the society or gave any thought as to whether the funds were properly looked after and invested. What was the responsibility with which they were charged? The society was not incorporated. As we understand the arguments of defendants in error, in the capacity in which they were acting they claim they were not charged with as great responsibility as an ordinary trustee of a private fund, but rather with that which rests upon the directors and trustees of an incorporated company. In *Briggs* v. *Spalding*, 141 U. S. 132, the court held that bank directors, though often styled trustees, were not so in the technical sense, and the relation between the corporation and such directors was rather that of principal and agent. The opinion adds (p. 147): "Undoubtedly under circumstances they may be treated as occupying the position of trustees to *cestui que trust*." This same decision holds that the degree of care required of such officers depends upon the subject to which it is to be applied and that each case must be determined in view of all the circumstances; that they can rightfully commit the administration of the affairs of the corporation to certain officials, but they must do something more than act as mere figure-heads; that they

cannot be absolved from the duty of reasonable supervision and that they must be held responsible for gross inattention to duty.

It seems to be a well settled rule that directors, trustees and officers of a corporation are bound to manage the affairs of the corporation with at least ordinary care and prudence and are liable for loss occasioned by their failure to do so. In accepting such a position the trustee or director undertakes that he possesses and will exercise at least the ordinary knowledge, skill and judgment requisite to the discharge of his duties and that he will be liable for gross negligence. (21 Am. & Eng. Ency. of Law,—2d ed.—874-876, and cases there cited; *Warner* v. *Pennoyer,* 61 U. S. App. 372.) In Perry on Trusts (vol. 1,—4th ed.—sec. 266,) that author states: "When trustees have accepted the office they ought to bear in mind that the law knows no such person as a *passive trustee* and that they cannot sleep upon their trust. If such trustee remains quiet for any reason and suffers some other to do all the business * * * he is answerable for the money as if he had conducted the business. * * * If a loss occurs from any want of attention, care or diligence in him after his acceptance, he may be held responsible for not taking such action as was called for." A trustee will be held responsible for failure to do that which he ought to do as well as for his acts of positive misconduct. He must respond in damages for any neglect of duty, express or implied. (28 Am. & Eng. Ency. of Law,—2d ed.—1065, and cases there cited.)

In our judgment the duties and responsibilities of the trustees herein partake more of the character of ordinary trustees than of bank directors or of any other officer of an incorporated company. Whatever the responsibility, it must depend, as has been stated, largely upon the subject under consideration and be determined in view of all the circumstances surrounding the transactions. Defendants in error were men of large business experience and standing. They

must have known, in permitting the use of their names as trustees of this savings society, that their reputation and standing in the community would cause business to be given to it for the very reasons that were suggested to plaintiff in error Holmes,—that is, that they were men of "business ability," and thereby would cause people who otherwise would not do so, to deposit with the society. They were charged with far greater responsibility as to the affairs of this society than were the ordinary depositors, such as plaintiffs in error here. The fact that at the time the banking firm of Moulton, Lathrop & Co. failed the society had on deposit only a little more than the aggregate sum of the three deposits here in question does not in any way excuse them for not looking after the investment of those funds. While they apparently knew nothing about the straitened financial condition of Moulton, Lathrop & Co., one of them did know that this banking firm had gone into the stock brokerage business, and his testimony shows that he thought, and told them, it was unwise for them thereafter to remain in the banking business. Had these men of business sagacity been actively attentive to their duties they might all have known, long before the failure, as to the condition of Moulton, Lathrop & Co. and withdrawn their deposit. The rules of the society were violated in leaving this money on deposit and not investing it.

In view of all the facts we are constrained to hold that the defendants in error wholly failed to perform their duties as trustees, and are therefore guilty of such negligence that they are jointly and severally liable to plaintiffs in error for the amount of their respective deposits.

The judgment of the Appellate Court is accordingly reversed and the decree of the superior court affirmed,

*Judgment reversed.*