JOSEPH P. ESTABROOK *vs.* INTERNATIONAL TRUST COMPANY.

Suffolk.     March 28, 1917. — May 26, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, & PIERCE, JJ.

*Trust,* Accountability of trustee.     *Mortgage,* In trust.

A mortgage by a corporation of certain of its property, including all the shares of the capital stock of two other corporations, to a trustee as security for the payment of bonds issued by the corporation contained, among others, provisions that the corporation might retain full voting powers upon the stock of the two other corporations, that it should pay a certain amount to the trustee each year to be placed in a sinking fund for redemption of the bonds, such payments to be made either in cash or in bonds taken at their face value, that bonds so delivered should be cancelled forthwith by the trustee, and that the trustee should incur no liability in consequence of permitting the corporation to retain possession of the property mortgaged. The corporation caused the two other corporations to sell their real estate, received the proceeds of the sale, used it to purchase some of the bonds and delivered them up to the trustee, who cancelled and destroyed them. There was no dissipation of trust property. At that time there had been no default under the mortgage. *Held,* that the payments made by the corporation by the receiving and cancellation of bonds were in accordance with its rights under the mortgage, and that there was no breach of duty by the trustee in accepting, cancelling and destroying the bonds.

Further provisions of the above mortgage trust were that the proceeds of a sale of any of the mortgaged property should be applied on account of yearly payments into a sinking fund, and that the trustee might and at the request of the corporation should apply any money in the sinking fund to the redemption of bonds to be drawn by lot; that under certain circumstances the corporation might sell or exchange some of the mortgaged property and that the trustee should release such property from the mortgage, the proceeds of such sale or exchange to be given to the trustee for further security and to be applied by direction of the corporation either to reimburse it for expenditures in acquiring the additional property added to the security or for the account of the sinking fund and the redemption of the bonds; that the trustee should not be required to take notice of any default of the corporation unless specifically notified in writing of such default; that the trustee could not be required to institute proceedings by reason of a default of the corporation until properly indemnified against expense; that the trustee should not be answerable for any error or mistake of judgment made by it in good faith, but should only be liable for its own wilful misconduct or gross negligence in the conduct of the trust and that it should incur no liability in consequence of its permitting the corporation to retain possession of the property mortgaged. At a time when the corporation was three years in default under the mortgage, the trustee released certain property from the mortgage for the corporation to sell. The entire proceeds

of the sale, $15,000, were paid to the trustee who used it for the purchase of twenty-three of the bonds at sixty per cent of their par value. About four months later the corporation was adjudicated a bankrupt and its assets were insufficient to satisfy the bonds outstanding. In a suit in equity by a bond-holder against the trustee to compel an accounting as to this sum, a single justice, upon evidence warranting the finding, stated that he was unable to find that the investment was not a proper one and that in making the purchase the trustee did not exercise the sound judgment and reasonable and prudent discretion required of a trustee, and dismissed the bill. There was some evidence that a single group of the bondholders profited by the transaction. *Held,* that under the circumstances the acts of the trustee in using the $15,000 to retire twenty-three of the bonds instead of using it to retire fifteen of the bonds to be drawn by lot could not be held to have been a breach of his duty, and that the findings of the single justice could not be said to be clearly wrong.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 10, 1915, by the holder of four bonds of the Ashland Emery and Corundum Company (hereinafter called the Ashland Company) against the International Trust Company to whom, as a trustee for the bondholders, the Ashland Company conveyed certain property in mortgage to secure the payment of the bonds, for an accounting as stated in the opinion.

Material portions of Article 4 of the mortgage trust agreement were as follows:

"Section 1. The Company Further Covenants and Agrees that it shall and will on the tenth day of June 1909, and on the tenth day of June in each year thereafter, so long as any of the said bonds shall be outstanding, deposit with the Trustee as and for a Sinking Fund for the redemption of the said bonds, the sum of $15,000 in the gold coin aforesaid of the United States of America, provided, however, and it is expressly understood and agreed that the Company may in whole or in part discharge of any such payment, deliver to the said Trustee bonds secured by this mortgage, with all the coupons for a later date thereto annexed, which bonds shall be taken at the face value as payment pro tanto and shall be by the Trustee forthwith cancelled, and provided further that any and all moneys, representing the proceeds of a sale of any of the properties or interests hereby granted and pledged, deposited with the Trustee on account of the said Sinking Fund as hereinafter provided, shall be regarded and applied on account of such yearly payments. All of such sums so paid over to the Trustee together with any increase therein

arising from interest thereon or the income derived from invest-ment thereof, after deducting all proper costs, charges and ex-penses incurred by the Trustee with respect thereto shall consti-tute a Sinking Fund for the purpose of redeeming at par and accrued interest in the manner hereinafter provided, bonds secured by this mortgage. And the Trustee may and at the request in writing of the party of the first part shall at any time apply any money in said Sinking Fund for the purpose aforesaid and at the price aforesaid, and all of such bonds so redeemed shall be forth-with cancelled and destroyed by the Trustee.

"In case the Company shall elect to pay off and redeem all of the said bonds or any of them, it shall notify the Trustee accord-ingly, and the Trustee shall apply any money in the Sinking Fund to the redemption at par of bonds as herein provided, and should the money in the Sinking Fund be wholly or partially insufficient for such redemption, the Company will at the times hereinafter provided, deposit with the Trustee the money neces-sary for the payment and redemption at par and accrued interest of the remaining bonds which the Company shall have elected to pay off and redeem as aforesaid."

The suit was heard by *Braley,* J. The evidence was taken by a commissioner appointed under Equity Rule 35. A memorandum of findings of fact was made by the single justice at the request of the plaintiff under R. L. c. 159, § 23. Material facts found by him are stated in the opinion. About four months after the last sale by the Ashland Company, as described in the opinion, it was adjudicated a bankrupt, and its assets were insufficient to satisfy the outstanding bonds. By order of the single justice a decree was entered dismissing the bill with costs; and the plaintiff appealed.

*F. W. Johnson & H. S. Davis,* for the plaintiff.

*J. R. Lazenby,* for the defendant.

DE COURCY, J. The Ashland Company on June 10, 1904, exe-cuted a mortgage of certain specified properties to the defendant as trustee for the holders of an issue of two hundred and fifty twenty year bonds. This suit was brought in 1915 by the plaintiff, for the benefit of himself and other bondholders, to compel the defendant trustee to account for the proceeds of four certain sales of property covered by the mortgage. Only three of the properties

included in the mortgage are involved in this suit, namely, all the shares of capital stock of the Diamond Mills Emery Company, all the capital stock of the Walpole Emery Mills Company and certain real estate in Ontario, Canada.

The mortgage provided that the certificates representing these shares of stock should be indorsed for transfer to the trust company, but not actually transferred on the books of the respective companies until default or until request for such transfer by the mortgagor; and that, until default should be made, the Ashland Company should be entitled to retain possession of all the mortgaged property except the shares of stock and should have the right to vote at all corporate meetings "upon all the shares of the stock of the said corporations pledged hereunder with the same force and effect as though such pledge had not been made for all purposes not inconsistent with the provisions and purposes of this Indenture."

Article 4 of the mortgage required the Ashland Company to pay $15,000 a year, beginning June 10, 1909, into a 'sinking fund for redemption of bonds, such payments to be made either in cash or in bonds taken at their face value, and the bonds to be cancelled by the trustee. The proceeds of a sale of any of the properties subject to the mortgage were to be applied on account of these yearly payments. And it was provided that the trustee might, and at the request in writing of the mortgagor should, apply any money in the sinking fund to the redemption of bonds to be drawn by lot.

Article 6 provided that if at any time any of the property granted and pledged could not advantageously be used in the proper and judicious operation of the business of the Ashland Company, or if the sale or disposition thereof became necessary or advisable for any cause, the same might be sold or exchanged for other property, and that upon the request of the Company, approved by two-thirds of its directors and by the trustee, the trustee should release the same from the lien of the mortgage upon the following, among other conditions: (b) that the proceeds of the sale or a sum equal to the proceeds should be deposited with the trustee for the further security of the bonds. This article further provided that moneys received by the trustee upon any sale or other disposition of the property subject to the

mortgage should be applied "as and when directed by the company" (1) to paying the company sums equal to any expenditures that should be made by the company for the acquisition of additional property, upon subjecting such property to the lien and operation of the mortgage; or (2) at the option of the company, such proceeds, or any part thereof, should be applied for the account of the sinking fund and for the redemption of bonds as provided in Article 4.

Other provisions of the mortgage material to this case are as follows: Article 7, § 7, deals with the right of bondholders to institute suit for any remedy under the mortgage upon first giving notice of default to the trustee and offering to indemnify it, or after affording the trustee a reasonable opportunity to exercise the powers granted to it or to institute proceedings in its own name. Article 9, § 1, provides that the trustee shall not be required to take certain proceedings, unless one or more of the bondholders give reasonable indemnity against expense; § 2 provides, that the trustee shall not be required to take notice of any default unless specifically notified in writing of such default, and § 3 provides among other things that the trustee should not be answerable "for any error or mistake of judgment made by it in good faith, but shall only be liable for its own wilful misconduct or gross negligence in the execution of said trusts." Article 12 provides that the trustee shall incur no liability in consequence of permitting the Ashland Company to retain possession of the property mortgaged.

The three alleged violations of duty by the defendant trustee, set forth in paragraphs 7, 8 and 9 of the plaintiff's bill, may be considered together. The material facts as found by the single justice are as follows: The stockholders of the Diamond Mills Emery Company in September, 1905, voted to sell a certain portion of its real estate for $5,000. This property was not included in the mortgage; but the Ashland Company, being owner of all the stock of the Diamond Mills Emery Company, caused the necessary corporate action to be taken. The Ashland Company received the $5,000, applied it in the purchase of five bonds of the issue in question and turned them over to the trustee, and they were cancelled and destroyed by the trustee on account of the sinking fund provisions of the mortgage.

In November, 1905, the Ashland Company, owning all the stock of the Walpole Mills Emery Company, caused this subsidiary company to sell its real estate for the sum of $8,000. The money was used to purchase eight bonds of the issue in question, which were delivered to the trustee and were cancelled on account of said sinking fund provision.

The remaining real estate of the Diamond Mills Emery Company was sold in the same manner in August, 1909, for $14,000. The Ashland Company purchased therewith fifteen of the bonds, and these were cancelled and destroyed by the trustee on account of the said sinking fund provision.

These three sales of property of the subsidiary companies were made without any prior understanding between the Ashland Company and the defendant trust company. There was no dissipation of trust property. There had been no default under the mortgage, and there was no deficit in the sinking fund. Under the express provisions of the mortgage above referred to, the Ashland Company had a right to make these payments into the sinking fund with bonds at their face value. And no breach of duty was shown on the part of the trustee in accepting, cancelling and destroying the bonds.

The remaining sale is that of certain real estate in Canada belonging to the Ashland Company. In consideration of a partial release of the mortgage so far as it covered this property, the defendant trustee received the purchase price amounting to $15,000. The complaint of the plaintiff is that the trustee used $14,394.15 of this amount to purchase from the Ashland Company twenty-three bonds of the issue in question, at sixty per cent of their face value, plus accrued interest. At the time of this purchase the $15,000 constituted the only asset of the sinking fund provided for in the mortgage. The mortgagor was then in default upon the sinking fund requirements for the years 1911, 1912 and 1913; but no request was ever made on the trustee to take any specific action by reason of said default, and no indemnity was ever offered to the trust company to secure it before taking any action.

On this point the finding of the single justice who heard the case is: "I am unable to find that under the circumstances this was not a proper investment for the trust company to make and

that in making this purchase the defendant did not exercise the sound judgment and reasonable and prudent discretion required of a trustee." Under the well settled rule this finding must stand unless shown to be clearly erroneous. There was evidence that the Ashland Company was fortunate in disposing of this real estate, which "was always a losing proposition," and that it requested the trust company to use the proceeds for the retirement of bonds; that "at the time when said bonds were purchased the trust company had no reasonable ground to believe that sixty (60) did not fairly represent the value of said bonds, and that had they made a reasonable inquiry at that time they would not have discovered the facts tending to show the condition which subsequently developed at the time when bankruptcy proceedings originated." This is not the case of an over-investment of a trust fund in a single security. See *Davis, appellant,* 183 Mass. 499. The sinking fund was created for the redemption of the issue of bonds in which these twenty-three were included. It was optional with the mortgagor to make its annual payments to that fund in money or in bonds of this issue, which should "be taken at the face value as payment *pro tanto.*"

The real ground for complaint by the plaintiff is, that the trustee should have used the money for the redemption of bonds selected by lot under Article 4, § 1. But, as bearing on the judgment and discretion exercised by the trustee, the fact must be borne in mind that while such selection would have resulted in the redemption of fifteen of the bonds, the action taken resulted in retiring twenty-three bonds and leaving a balance of more than six hundred dollars in the sinking fund. It is urged, and with some support in the evidence, that a single group of bondholders profited by this transaction; but this undoubtedly was taken into consideration by the single justice. His finding is, "On the entire evidence, and under Articles 12 and 9, §§ 2 and 3, of the indenture of trust, I find and rule that the defendant is not chargeable for either amounts as set forth in paragraphs seven, eight, nine and ten of the bill."

In view of what has been said we deem it unnecessary to consider the scope and effect of the immunity clause in said § 3, or to discuss the application of *Warren* v. *Pazolt,* 203 Mass. 328. See *Minot* v. *Burroughs,* 223 Mass. 595, 604 and cases cited;

*Digney* v. *Blanchard,* 226 Mass. 335; *Holmes* v. *McDonald,* 226 Ill. 169; *Rae* v. *Meek,* 14 App. Cas. 558.

We cannot say on this record, that the finding of the judge who heard the case and saw the witnesses was clearly wrong; and the entry must be

*Decree affirmed.*