### WILLIAM A. DICKINSON, appellant.

Hampshire.    September 24, 1889. — September 5, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, HOLMES,
          & KNOWLTON, JJ.

*Trust Fund — Investment by Trustee.*

The trustee of a fund amounting to $16,260.05, in May, 1881, invested $3,573.75 of it in the stock of a railroad company, which had been constructed at great expense through a new and comparatively unsettled country, and was heavily in debt, and whose continued prosperity depended upon many circumstances which could not be predicted. In the August following, he invested $2,475 more in the same stock. Both investments were made by him in entire good faith, and after careful inquiry of many persons as to the value of the stock and the propriety of the investments. *Held,* that he did not exercise a sound discretion in making the second investment, and should be charged with the amount thereof.

APPEAL from a decree of the Probate Court, disallowing in part the account of William A. Dickinson as trustee under a deed of trust. Hearing before *C. Allen*, J., who reported the case for the determination of the full court, in substance as follows.

On July 23, 1881, one Boltwood executed a deed of trust conveying certain real and personal property, which was to be kept safely invested, the income thereof to be paid to certain persons during life, and the principal to be distributed in a manner provided upon the decease of all such persons. On February 5, 1878, the trustee named in the deed of trust died, and on October 7, 1879, Dickinson was appointed his successor. The first account filed by Dickinson, which was allowed on May 3, 1887, disclosed a principal fund amounting to $16,260.05, and contained a list of investments made by him. This account recited that Dickinson on May 9, 1881, bought thirty shares of the Union Pacific Railroad Company of a par value of $100 each at $119 each, the cost amounting, with commissions, to $3,573.75; and that on August 16, 1881, he bought twenty shares more of the same stock at $123 each, which, with commissions, cost him $2,475. These two items were contained in the second or final account presented by Dickinson to the Probate Court, and on July 23, 1888, a decree was entered therein disallowing them. The time has now come for a final distribution of the trust fund, and the sole controversy in the case is whether a loss arising from a diminished value of the above shares shall in whole or in part be borne by the trustee personally.

. The evidence which was appended to the report tended to show that conservative trustees were in the habit of investing only about one third of a trust fund in fluctuating securities, which were defined as covering all kinds of stock, and of placing no more than five per cent of a trust fund in any one of that class of securities; that the appellant before purchasing the shares in question made many inquiries of bankers and others thought by him to be persons of conservative judgment, whose judgment he esteemed better than his own, and was advised by them that the investments were safe and prudent investments for him to make; that he purchased more than double the number of similar shares for himself and a sister, and for a college of which he was the treasurer; and that the life tenant knew

of the investments at the time they were made, and made no objection thereto. The evidence also tended to show that the Union Pacific Railroad, which extended from Council Bluffs, Missouri, to Ogden, Utah, there connected with the Central Pacific Railroad, and was largely dependent upon the latter railroad for through freight and travel; that in 1881 its railroad ran through a mountainous and newly settled country, which was largely unproductive; that the Southern Pacific Railroad had just been completed, and trains had begun to run upon it, and had diverted business from the Central and Union Pacific Railroads; that the Northern Pacific Railroad was in the same year in process of construction; that, to obtain new business, the managers used the money of the company to build other lines of road not provided for by its charter, that the road was built at a larger cost than that of any other railroad; that the money with which to build it was borrowed at a high rate of interest, and its relations to the United States, to which it was largely indebted, were uncertain; that the capital stock of the company was $150,000,000, and its bonded debt in that year amounted to $92,984,625, of which a large share was due to the United States; and that the managers of the company were in bad odor with the public and the press, and the people of Nebraska and Kansas antagonized it because of its high local rates and the difficulty of adjusting claims against it for damages.

The case was argued at the bar in September, 1889, and afterwards was submitted on the briefs to all the judges.

*G. Wells*, (*J. Barnes* with him,) for the appellant.

*D. W. Bond*, contra.

FIELD, C. J. The general principles which should govern a trustee in making investments, when the creator of the trust has given no specific directions concerning investments, have been repeatedly declared by this court. *Harvard College* v. *Amory*, 9 Pick. 446. *Lovell* v. *Minot*, 20 Pick. 116. *Brown* v. *French*, 125 Mass. 410. *Bowker* v. *Pierce*, 130 Mass. 262. *Hunt, appellant*, 141 Mass. 515.

The rule in general terms is, that a trustee must in the investment of the trust fund act with good faith and sound discretion, and must, as laid down in *Harvard College* v. *Amory*, at page 461, "observe how men of prudence, discretion, and intel-

ligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested."

It is said in the opinion in *Brown* v. *French, ubi supra* : " If a more strict and precise rule should be deemed expedient, it must be enacted by the Legislature. It cannot be introduced by judicial decision without working great hardship and injustice." It is also said, " The question of the lawfulness and fitness of the investment is to be judged as of the time when it was made, and not by subsequent facts which could not then have been anticipated." A trustee in this Commonwealth undoubtedly finds it difficult to make satisfactory investments of trust property. The amount of funds seeking investment is very large ; the demand for securities which are as safe as is possible in the affairs of this world is great; and the amount of such securities is small, when compared with the amount of money to be invested. Trusts frequently provide for the payment of income to certain persons during their lives, as well as for the ultimate transfer of the corpus of the trust property to persons ascertained, or to be ascertained, at the termination of the trust; and a trustee must, so far as is reasonably practicable, hold the balance even between the claims of the life tenants and those of the remaindermen. The life tenants desire a large income from the trust property, but they are only entitled to such an income as it can earn when invested in such securities as a prudent man investing his own money, and having regard to the permanent disposition of the fund, would consider safe. A prudent man possessed of considerable wealth, in investing a small part of his property, may wisely enough take risks which a trustee would not be justified in taking. A trustee, whose duty it is to keep the trust fund safely invested in productive property, ought not to hazard the safety of the property under any temptation to make extraordinary profits. Our cases, however, show that trustees in this Commonwealth are permitted to invest portions of trust funds in dividend paying stocks and interest bearing bonds of private business corporations, when the corporations have acquired, by reason of the amount of their property, and the prudent management of their affairs, such a reputation that

cautious and intelligent persons commonly invest their own money in such stocks and bonds as permanent investments.

The experience of recent years has, perhaps, taught the whole community that there is a greater uncertainty in the permanent value of railroad properties in the unsettled or newly settled parts of this country than was anticipated nine years ago. Without, however, taking into consideration facts which are now commonly known, and confining ourselves strictly to the evidence in the case, and the considerations which ought to have been present to the mind of the appellant, when in May and August, 1881, he made the investments in the stock of the Union Pacific Railroad Company, we think it appears that he acted in entire good faith, and after careful inquiry of many persons as to the value of the stock and the propriety of the investments. We cannot say that it is shown to our satisfaction that the trustee so far failed to exercise a sound discretion that the investments should be held to be wholly unauthorized. Still, it must have been manifest to any well informed person in the year 1881, that the Union Pacific Railroad ran through a new and comparatively unsettled country; that it had been constructed at great expense, as represented by its stock and bonds, and was heavily indebted; that its continued prosperity depended upon many circumstances which could not be predicted; and that it would be taking a considerable risk to invest any part of a trust fund in the stock of such a road.

In this case the whole trust fund appears, by the first account, to have been $16,260.05. On May 9, 1881, the trustee bought thirty shares of the stock of the Union Pacific Railroad Company at $119 per share, which, with commissions, amounted to $3,573.75. This is an investment of between one fourth and one fifth of the whole trust fund in this stock, and is certainly a large investment relatively to the whole amount of the trust fund to be made in the stock of any one corporation. After this, on August 16, 1881, he purchased twenty shares more at $123 per share, amounting with commissions to $2,475. The last investment, we think, cannot be sustained as made in the exercise of a sound discretion. While we recognize the hardship of compelling a trustee to make good out of his own property a loss occasioned by an investment of trust property which he has made

in good faith, and upon the advice of persons whom he thinks to be qualified to give advice, we cannot on the evidence hold that the trustee was justified in investing in such stock as this so large a proportional part of the property.

It appears by the report of the single justice before whom the case was tried, that " the time has now come for a final distribution of said trust fund."   It does not appear that, when the first account was allowed, there was any adjudication of the questions now before us, and they are not therefore *res judicata*, and no assent to these investments is shown on the part of the persons now entitled to the trust property.   The result is, that this last investment is disallowed, and that the trustee must be charged with the amount of it, to wit: $2,475, and with simple interest thereon from August 16, 1881, and must be credited with any dividends therefrom which he has received and paid over, with simple interest on each, from the time each dividend was received.

The decree of the Probate Court must be modified in accordance with this opinion.              *Decree accordingly.*