### FREDERICK DAVIS, appellant.

Suffolk.　　December 3, 1902. — June 17, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Trust*, Sound discretion of trustee as to investments. *Devise and Legacy*, Construction. *Evidence*, Remoteness.

Trustees under a will holding a fund of $30,000 to pay the income to the testator's daughter during her life and upon her death to distribute the principal among her children, after having invested about $6,500 in the bonds and stock of a certain railroad company heavily indebted and whose continued prosperity depended upon many circumstances that could not be predicted, made further investments of $5,000 in the bonds of the same railroad company and about $700 in its stock. *Held*, that the last named investments made when from a fifth to a quarter of the trust property already had been invested in the stock and bonds of the same company should be disallowed in the account of the trustees, making them personally liable for the loss incurred. Following *Dickinson, appellant*, 152 Mass. 184.

A will creating a trust to pay the income of the fund to the testator's daughter during her life and upon her death to distribute the principal among her children, after giving the trustees power to make and change investments of real and personal property "in such manner as to them shall seem expedient," added "it being my intention to give my said trustees and those who may be made such, the same dominion and control over said trust property as I now have." *Held*, that the words quoted were inserted to give the trustees power to deal with the estate fully and expeditiously, and did not release them from the obligation to exercise a sound discretion in making investments.

*Semble*, that on the issue of the exercise of sound discretion by a trustee under a will in making investments, evidence is admissible to show a practice existing among other trustees in regard to the percentage of a trust fund to be invested in the stock and bonds of any one railroad company.

APPEAL, from a decree of the Probate Court of the County of Suffolk, disallowing in part the fourteenth and fifteenth accounts of the surviving trustee under the will of Moses Day, late of Boston.

It appearing that the appellant had died after the entry of the appeal, his executors were allowed to prosecute the appeal. The case came on to be heard before *Hammond*, J., who found that the testimony of all the witnesses was true in all material matters, and at the request of the parties reserved the case for determination by the full court.

The details of the investments in the bonds and stock of the Atchison, Topeka and Santa Fé Railroad Company, described by the court, were as follows:

| | | | | |
|---|---|---|---|---|
| Jan. 15, 1883. | $2,000 six per cent bonds . . . . . . . . | | | $2,000.00 |
| Dec. 11, 1885. | 5 shares of stock . . . . | $428 12 | | |
| | Reduced by sale of rights . | 24.10 | $104.02 | |
| Dec. 24, 1886. | 45 shares of stock . . . | $4,246.88 | | |
| | Reduced by sale of rights . | 97.65 | 4,149.23 | |
| Feb. 17, 1887. | 6 shares of stock . . . . | $593.50 | | |
| | Reduced by sale of rights . | 13.02 | 580.48 | |
| Dec. 28, 1887. | 2 shares of stock . . . . | $185.88 | | |
| | Reduced by sale of rights . | .94 | 184.94 | |
| | Total stock . . . . . . . . . . . | | | 5,318.67 |
| June 18, 1887. | $5,000 collateral trust bonds . . . . . . . | | | 4,995.00 |
| | | | | $12,313.67 |

*R. D. Weston-Smith & C. Walcott*, for the appellant.

*R. F. Sturgis*, guardian *ad litem*, contra.

MORTON, J. The first question in this case is whether in the investment of the trust funds in the stock and bonds of the Atchison, Topeka and Santa Fé Railroad Company, to the extent to which they invested in them, the trustees manifested the sound judgment and reasonable discretion and prudence which is required of trustees in such matters. The question is to be determined as of the time when the investments were made. There is also a question whether the general rule is affected by the language creating the trust. It is agreed that the purchases were made in perfect good faith and that before making them the trustee took the advice of persons on whose opinion he thought he was entitled to rely as to the value of the securities. It is also agreed that at the time of the purchases he had invested his own money to a considerable amount in stock and bonds of the company.

The trust estate consisted of a fund of $30,000 bequeathed by the testator to the trustees in trust, to invest the same and pay over the income to the testator's daughter during her life and upon her death to distribute and pay over the principal to and amongst her children. From 1883 to 1887 inclusive the trustees invested in the stock and bonds of the Atchison, Topeka and Santa Fé Railroad Company upwards of $12,000 of the trust funds as follows: On January 15, 1883, they purchased $2,000 of the six per cent sinking fund bonds issued by that company and secured by mortgage bonds of various railroad companies whose lines formed a part of the Atchison system. On December 11, 1885, they purchased five shares of the stock, on December 24, 1886, forty-five shares of stock, on February 17, 1887, six shares of the stock, on June 18, 1887, $5,000 collateral trust bonds issued by it and secured by mortgage bonds of various railroads, and on December 28, 1887, two shares of the stock. Prior to the last purchase of bonds and the last two purchases of stock between a quarter and a fifth of the trust property had been invested in the stock and bonds of the company. The Probate Court disallowed the last purchase of bonds and the last two purchases of stock and allowed the other investments. In *Dickinson, appellant*, 152 Mass. 184, where the facts in regard to the situation of the corporation whose stock was purchased were very similar to the facts in this case, the decision was in effect that so much of the investment as was in excess of a quarter to a fifth of the whole trust fund could not be sustained as made in the exercise of a sound discretion. The court declined to say that the trustee had so far failed to exercise a sound discretion that the investments should be held to be wholly unauthorized, but disallowed them in part. We do not see how this case can be fairly distinguished from that, the fact that the investment was partly in stock and partly in bonds of the company not being sufficient, it seems to us, to distinguish it. And while we recognize in this case as the court did in that "the hardship of compelling a trustee to make good out of his own property a loss occasioned by an investment of trust property which he has made in good faith, and upon the advice of persons whom he thinks to be qualified to give advice," we cannot in this case any more than the court could in that hold that upon the evi-

dence the trustee was justified in investing in the stock and bonds in question so large a proportion of the trust property.

The remaining question is whether the language of the will creating the trust takes this case out of the general rule and relieves the trustee from liability on account of imprudent investments, if made in good faith. The language of the will does not in terms exempt the trustees from liability for bad investments made in good faith as the testator might have done, if it had occurred to him and he had deemed it best to do so. The testator gave the trustees power to lease in whole or part the real estate upon such terms and conditions "as they shall think reasonable," and to sell the whole or any part of the trust estate real or personal for such sum or sums "as they shall deem proper, . . . with full power to make purchases, investments and exchanges, to take and receive deeds, to convert real into personal and personal into real estate, and that again to exchange and re-exchange in such manner as to them shall seem expedient; it being my intention to give my said trustees and those who may be made such, the same dominion and control over said trust property as I now have." The will contains no direction as to the securities in which the trustees are to invest. That matter is left to their judgment and discretion, and we think that in such a case the general rule applies, and that they are bound to exercise a sound judgment and a reasonable and prudent discretion. *Dickinson, appellant, ubi supra. Mattocks v. Moulton,* 84 Maine, 545. *King v. Talbot,* 40 N. Y. 76. *Kimball v. Reding,* 31 N. H. 352.

We agree with the judge of the Probate Court in thinking that the words, "with full power to make purchases, investments and exchanges . . . in such manner as to them shall seem expedient; it being my intention to give my said trustees and those who may be made such, the same dominion and control over said trust property as I now have" are enabling words inserted to give to the trustees the power to deal fully and expeditiously with the estate, and that they do not release the trustees from the obligation to exercise a sound judgment and a reasonable and prudent discretion in regard to such investments as they may make under the authority given them.

We have not considered the evidence that was objected to in

regard to the custom amongst trustees in Boston respecting the percentage of any one estate to be invested in the stock and bonds of any one railroad, though we do not see why the testimony was not competent. Similar testimony seems to have been admitted in *Dickinson, appellant, ubi supra.*

The result is that we think that the decree of the Probate Court should be affirmed.

*So ordered.*