In the Matter of the Estate of WILLIAM H. HERRIMAN, Deceased.

Surrogate's Court, Kings County, December 10, 1931.

*Rumsey & Morgan,* for the petitioner.

*Stanley Gray Horan,* special guardian for Elizabeth H. Sutro, formerly Elizabeth L. Hiss.

*Taylor, Blanc, Capron & Marsh,* for City Bank Farmers Trust Company, as general guardian of the property of Elizabeth L. Hiss, an infant over the age of fourteen years.

WINGATE, S. Whereas no formal objection has been interposed to the intermediate account of the trustee in this proceeding, the special guardian has raised a question for decision respecting the authority of the trustee to receive and hold certain securities now in its possession.

In the 22d item of the will authority was granted to the executors and trustee: " In their discretion to continue to hold or to turn over as parts of the shares of any estate hereinbefore given, any real estate, stocks, bonds or other securities or property in which, at the time of my death, any portion of my estate shall be invested."

Aside from this power, testator gave no discretion of investment or holding.

At the time of setting up the trusts, certain common stocks were turned over to the trustee and were retained by it under this discretionary power. Some of these are still in its possession, but certain others have been exchanged for new securities as a result of consolidations, mergers or some other form of corporate reorganization.

The precise problem for decision, therefore, is whether the quoted language of the will is broad enough to authorize such continued holding by the trustee of the securities which have been substituted for the original shares owned by the testator at the time of his death, as a result of corporate reorganizations.

Section 111 of the Decedent Estate Law (as amd. by Laws of 1928, chap. 362), regulating the investment of trust funds by testamentary fiduciaries, incorporates by reference section 239 of the Banking Law, which latter section, so far as here material, prefaces an enumeration of allowable investments by the words: " A savings bank may invest the moneys deposited therein, * * * in the following property and securities *and no others.*" (Italics not in original.)

This regulation of trust investments, as is noted in the opinion of this court in *Matter of Robbins* (135 Misc. 220, 222), is merely a crystallization of the rules which were enunciated in the leading case of *King* v. *Talbot* (40 N. Y. 76) and have since been continuously effectuated. In view of the public policy thus demonstrated, a testamentary fiduciary is held in a very strict degree to this limited list of investments. To escape liability for any departure therefrom, it must be able to point to a clear testamentary authorization, broad enough to cover the particular act of investment or retention performed. In this respect, a strict rule of construction respecting the power of the trustee must be adopted. It is this consideration which was given controlling weight in the determination in *Matter of Davison* (134 Misc. 769, 774; unanimously affd. on the opinion of this court, 230 App. Div. 868), where it was decided that a similar testamentary authorization would not permit trustees to exercise rights for subscription received subsequent to the death of the testator, on securities purchased by him and retained by the trustees.

A few sentences of the opinion thus adopted by the Appellate Division are not irrelevant to the present discussion: " Under the phraseology of the will, it seems apparent that whereas testator was willing to permit the executor and trustees to hold the investments which he had himself purchased, he was not willing to grant

them discretion to invest on their own account other than in securities authorized by law. It would have been quite possible for him, had he desired to do so, to have made an exception in his will to the effect that the executors should reinvest only in legal securities except that they might increase non-legal holdings in which he had invested in his lifetime. He did not give such discretion. Although he might personally have been willing to run certain risks by investing a limited amount in speculative or semi-speculative securities, *non constat* he would have been willing personally to invest a greater sum or have his trustees do so."

A determination of the presently propounded problem must, therefore, resolve itself, in each case, into a question of fact as to whether the new securities which have come into the hands of the trustee in substitution for those received from the testator, are merely the securities of the same corporation under another name or whether they are those of a distinctly different or materially altered business. In this connection, the observations of Chief Judge CARDOZO in *Mertz* v. *Guaranty Trust Co.* (247 N. Y. 137, at pp. 141–144) are particularly pertinent. The question presented in that case was as to the authority of a fiduciary under a trust *inter vivos* to sell certain securities, which, as a result of merger and reorganization of corporations, had come into its hands in substitution for certain stocks which the settlor had expressly directed the trustee to continue to hold. In reversing adverse determinations below, the court decided that the new securities were in reality a different investment from those which had been delivered to the trustee by the settlor, since the old investment had been subordinated to alien priorities and a new capital structure had been erected.

Insufficient data are presented in the case at bar to enable the court to determine whether the change in the holding of the present trustee is real or merely apparent. If it is substantial, the principles discussed in the *Mertz* case apply, and the continued holding by the trustee is beyond the authorization of the terms of the will and subject to its own risk in the event of future loss.

Proceed accordingly.