## Elkins' Estate

H. *Lester Haws*, G. *Ruhland Rebmann, Jr.*, and *Frank G. Raichle*, for petitioner.

*Aaron S. Swartz, Jr.*, and *Boyd Lee Spahr*, contra.

HOLLAND, P. J., January 23, 1934.—By opinion under date of September 17, 1932, the court considered preliminarily the application of section 48 of the Fiduciaries Act of 1917, the respondents having pleaded the limitation of actions provided by this section. For the reasons given in that opinion, we concluded that this statute of limitations had no application to this case, and under the same date made a decree that further argument should be had upon the petition as though a demurrer had been filed in order to test the sufficiency of the petition and decide whether it sets out a cause of action.

Argument was had and briefs submitted.

The briefs were captioned under a proceeding with reference to a similar trust under this same will for Marie Louise Elkins, which is identical in its terms with this trust for Felton Elkins, and the proceeding pending before this court with reference to said trust is also identical in every particular with this proceeding, and both can be considered together and the disposal of one automatically disposes of the other. In our disposal of the preliminary question above referred to, our major opinion was delivered in this proceeding and adopted as the foundation for the opinion in the other proceeding, with an identical decree in the latter. We will, for convenience, pursue the same course as to this step in both proceedings.

The controlling question is whether the petition on its face sets out any sustainable cause of action. For the purpose of answering this question, we must consider all the averments of fact in the petition as true.

The purpose of the petition is to have the adjudication upon the trustees' account, confirmed absolutely May 30, 1925, and the decree of May 20, 1925, discharging the respondent, Sidney F. Tyler, opened and reviewed for the purpose of giving petitioner opportunity to prove that respondents should be surcharged for the depreciation in value of the securities constituting the investments of the trust.

Aside from any arguments for or against a review, the petition should be

dismissed if, admitting the truth of all averments of fact contained therein, a surcharge could not be sustained even if a review were granted. To put it conversely, if a surcharge could not be sustained, granting the truth of the averments of fact, no further arguments for review need be considered. The decisive question therefore is whether a surcharge could be sustained.

The grounds for a surcharge of the trustees assigned by the petitioner are in effect (1) gross negligence in accepting from the executors securities all of the same class or character and excessively large blocks or lots of each security, or, to use petitioner's term, "undiversified" securities; (2) gross negligence accentuated because they could have selected a more diverse number of securities of different class and character from the available securities in testator's estate at the time of the erection of the trust; (3) gross negligence in that after receiving the securities of the same class or character they failed thereafter to convert and diversify their investments; (4) gross negligence in that, notwithstanding there was a steady decline of the securities of the trust from the time of its erection until 1925, when the account was filed, the trustees failed to dispose of any of the securities; (5) failure of the corporate trustee to effect or undertake to effect reimbursement for depreciation immediately prior to and at the time of its assuming office as a cotrustee; (6) intentional sacrificing by the trustees of the two trusts of $1,000,000 each in favor of the residuary estate, two of the trustees and their families being interested in the latter.

This last ground, the sixth, need have little consideration given it. It is the averment of an inference which petitioner asks to have drawn from the other averments of fact in the petition and is, in reality, not an averment of fact in itself. In the first place, it is an affront to the testator, who, be it remembered, selected each one of the trustees, presumably because of his confidence in them, and is so remotely possible under all the averments of the petition as to be absurd. When we consider also that one of the trustees was the late John G. Johnson, Esq., who the petitioner admits was not interested in any way, it involves the presumption that this disinterested trustee acquiesced in the other trustees' slighting these two trusts to the profit of the residue, and reduces such an averment to even greater absurdity. We therefore decline to consider this element of bad faith as having any bearing on the case.

This reduces the grounds of the petition to two essential elements, lack of diversification in the investments and failure to convert when the investments steadily declined, the corporate trustee being equally negligent with the individual ones for not seeking a surcharge of the latter upon these two grounds upon its accession to office.

It is conceded by the petitioner that the trustees were not confined to legal investments. It is, of course, further conceded by all concerned that the investments are not of the class of legal investments. The parts of the will pertinent to the question of responsibility of the trustees would seem to be those following.

The first in importance, of course, are the fifth and sixth items of the second codicil, erecting the two trusts under consideration, where it is particularly specified that the $1,000,000 are "to be paid to them in cash or in securities at an appraisement to be made by them, such securities not being necessarily those which are 'legal investments',.to invest and reinvest the same and to alter, vary and change investments and reinvestments without being confined to what are known as 'legal securities.' " And later in these items again, "subject with like powers to invest, reinvest, alter, vary and change investments and reinvestments without being confined to 'legal securities.' " And still later, upon the happening of certain contingencies, to pay the principal over to the trustees

of the residuary estate "to be held upon precisely the same trusts, under like powers, for like estates and remainders, as are declared of and concerning my residuary estate, precisely as though said fund had passed to said trustees as part of my original residuary estate."

"Fourth [item of the will]—I desire as much as possible to avoid making public any inventory or appraisement of my estate. Of course, for the protection of those interested therein, my executors will prepare, with care and completeness, the usual inventory and appraisement.

"I direct them, however, not to file this, but to file of record a formal inventory and appraisement, which they may call 'formal'. This they may make as indefinite and incomplete as they shall see fit."

The importance of this item is that it demonstrates the desire and intent of the testator to surround the administration of his estate with as much secrecy as possible. He desires that the public should know as little about his private affairs as possible, consistent with the inescapable divulging of so much as was necessary for the executors and trustees to administer his estate and the trusts therein contained. He carefully selected his executors (who at the same time were his trustees), all of whom were in his strict confidence apparently during his lifetime and whom he chose to continue in that confidence after his death. It indicates that his confidence was so great that he was willing that their administration should be even secret, and that he was willing to substitute their absolute discretion for any possible safeguard provided by the law. It would take no stretch of the imagination to make the reasonable inference that he might have even given them private and secret instructions during his lifetime that do not appear in the will itself. Be that as it may, this item certainly and unequivocally imports an extraordinary amount of confidence placed in the trustees, extending far beyond in degree that ordinarily permitted to trustees, and we are of the opinion it should not be ignored in consideration of the whole case.

"Tenth [item of the will]—I confer upon my trustees over the whole of my estate, until the decease of my wife, and thereafter, over the various parts or shares of my estate, held upon an active trust, the following powers: . . .

"(6) To hold and retain any investment of which I might die possessed; and to make any compromises which to them may seem fit.

"(7) To act with the same powers over the trust property that they would possess were they the actual owners thereof.

"(8) To sell out and assign investments and reinvestments; to subscribe for stock allotments; to make investments of mine good, or more advantageous, by additional payments, subscriptions or purchases of like investments; to invest and reinvest in any form of investment they may see fit saving in the purchase of shares of corporate stock, whether such investments be or be not what are known as 'legal.' The power to invest in the purchase of shares of stock of corporations, shall be restricted to the making good or advantageous as above provided investments in such shares already made by me. . . .

"(11) To loan moneys to one or more of the cestuis que trustent, with or without security, if all the Trustees who, at the time of the loan, may be acting shall consent."

In the last item of the will, itself marked "lastly", testator provides for his named trustees, under the conditions therein specified, to nominate some trust company, and, by the sixth item of the first codicil he modifies this provision by selecting the trust company under those circumstances himself, and the one selected is Land Title & Trust Company, of which the corporate fiduciary

now before the court as one of the respondents is the successor. As heretofore stated, said corporate fiduciary is therefore a named trustee under the terms of the will and codicils.

The clause above referred to as (11), authorizing the trustees to loan money to the beneficiaries of the trusts, is important again as showing the extraordinary authority and confidence placed by testator in his trustees. Such an authority is indeed rare, and it is scarcely possible to imagine a testator going to greater lengths to indicate the ultimate confidence in the fiduciaries named by him in his will. Again, this consideration should be observed in the consideration of the whole case.

"Second [item of fourth codicil]—I hold at the present time a considerable interest in the shares of stock of the Land Title & Trust Company. I am also the owner of an undivided one-half interest in the New Land Title Building.

"I believe that both these investments are good and of such character as should be retained for the purposes of the trusts and devises of my will. I therefore direct that there shall be no sale of my interest in said building, and that there shall be no sale of my shares of stock in said Company unless under such circumstances as in the discretion of those then holding the shares shall make it imperatively necessary that such sale shall be made."

The only significance of this last-quoted item is to demonstrate that the testator was extremely opinionated as to the soundness and excellence of the investments of which he died seised or possessed, and taken together with a number of the other extracts from the will above quoted amounts to such a direction to hold investments of which he died possessed, unless unusual circumstances required their conversion, to justify, in some degree at least, trustees retaining investments of which he died possessed, even exclusive of other considerations.

It seems at least arguable that testator did not intend the trustees of these particular trusts under consideration to have powers respecting investments any broader than those he gave them specifically in items five and six of the second codicil in which these trusts were established.

The broadest powers seem to be in item ten (sixth, seventh, and eighth) of the will; and those powers do, in terms, seem to apply to all trusts. Yet it might be argued that at that time he scarcely could have contemplated these two trusts, as they were not established until more than 10 years later (date of will July 11, 1892; date of second codicil October 15, 1902). It might be further argued, if testator intended the trustees of these two trusts to have exactly the same powers as the trustees of the residuary trusts had, why did he not incorporate those powers by reference to those powers in the second codicil (items 5 and 6) instead of going into the question at length in said items of said codicil. He did use this means of designating the powers of trustees in another trust, set up in the fourth codicil, where he did incorporate by reference.

As a matter of fact, testator did actually incorporate by reference the powers given the residuary trustees in both items five and six of the second codicil establishing these trusts, but he did so in providing for certain contingencies arising by the death of his grandchildren leaving no issue surviving, etc. From this it might be interpreted that during the lifetime of the original cestuis que trustent, Marie Louise Elkins and Felton Elkins, and during the minorities of their children certain powers specifically and at length set forth should obtain, but upon certain contingencies happening other powers not specifically set forth, incorporated by reference, should come into force.

This might be taken as grounds for the conclusion that the intention was to give these trustees a different set of powers than the residuary trustees have, for a certain period, and thereafter the same powers. This argument, however, does not appear convincing to us, and we are of a contrary opinion. Not only does the general trend gathered from the entire will and codicils appear to be that the trustees of the two trusts under consideration are to have as extensive powers as those over the residuary trust or any other trust, but the language of the tenth item of the will appears to us to be conclusive. It is that the powers therein stated are conferred "over the various parts and shares of my estate, held upon an active trust". We regard it as a reasonable interpretation that he intended to say or imply any active trust therein erected or thereafter erected, nor does there seem to be any conceivable reason why he should make any distinction as to the powers of the trustees of these two particular trusts as distinguished from any of the other trusts erected in the will and codicils.

Conceding that the powers of the trustees of these two trusts are to be ascertained from the will and all the codicils taken as a whole, and not merely from the second codicil, and we so hold, how far do the testamentary provisions go in relieving the trustees from the usual restrictions on investments?

(1) They may set up the corpus of each trust in the first instance in securities owned by testator at his death—at their own appraisement.

(2) They are absolved from the statutory requirements of confining their investments to "legal investments"; but may not invest in shares of corporate stock except under certain particular conditions specified. This might be regarded as a fairly comprehensive exception to the unlimited removal of the restriction to legal investments, removing as it does probably the largest field of investment outside of legal investments, to wit, corporate stocks.

(3) They may retain any of the testator's investments, that is to say, they are authorized but not directed to retain them. This is related to the above first conclusion, authorizing and not directing the trusts to be set up out of securities on hand.

(4) They may act with the same powers over the trust property as though they were the actual owners.

This last provision is expressed in language about as broad as testator could choose. It is general, but is followed by specifically named powers. Aside from this, just what does such a provision mean, considering it as though it stood alone? A substantially similar provision, "it being my intention to give my said trustees . . . the same dominion or control over said trust property as I now have", was held to be an enabling one "to give to the trustees the power to deal fully and expeditiously with the estate", and not one to release them from the duty of due care: Davis, Appellant, 183 Mass. 499, 67 N. E. 604. Petitioner's contention on this provision as set forth at pages four and five of the reply brief would seem to be correct.

Generally speaking, testator could have gone further in giving these trustees powers over investments. He could have exempted them from liability for losses incurred altogether, as has been done in many instances in reported cases. Had he done so, then the only possible ground of liability here would have been fraud. But he did not, so that the testator's intent is deducible from the will and codicils to about this effect: The trustees are not to be confined to legal investments; they may, but are not compelled to, continue the investments he had at the time of his death; they may sell any of the investments except his Land Title & Trust Company stock and his interest in the

Land Title Building (and even these under certain circumstances designated), and reinvest in any investment except corporate stock.

Generally, the underlying doctrine of investments of trustees is the same in all the various jurisdictions. Some States have provided by statute how trust funds shall be invested, others have not. Even in the former, the statutes are for the trustee's guidance, and he may deviate therefrom. If he does so, however, it is, of course, at his peril. In States like Massachusetts, where no such statutory provisions are laid down, the rule of "sound judgment and reasonable discretion" controls.

Trustees may be relieved of statutory restrictions by the terms of the will, as was done here. The effect of this would seem to be to substitute something like the Massachusetts doctrine for the Pennsylvania provision as to legal investments, and to substitute the general rule of "ordinary care and prudence" in place of the arbitrary statutory rule. But relieving trustees from the statutory restriction does not relieve them from exercising due care. The testator can even go so far as to relieve trustees from liability for loss, but even there it is not entirely clear that they do not have to exercise at least some care.

Petitioner has relied upon and argued at great length that lack of diversification, both in the original choice of the securities and in the subsequent retention thereof, constitutes a basis of negligence or lack of the degree of care that the trustee should exercise regarding the investments.

However established the rule of diversification may be in investment circles, it cannot be said to be a part of the law of Pennsylvania as applied to investments by trustees. The principle may be a sound one and is forcefully contended for in a number of examples of financial literature by expert financial commentators to which the court was referred by the petitioner. It might be argued with some force that it should be the law, especially in a case such as this, where the corpus of the trust is large and where it might be said to be easier to diversify in dealing with a large fund rather than a small one. The list of investments of the testator at the time of his death was fairly well diversified, but as shown in the petition traction securities constituted over 38 percent of it, and it might be said that these traction securities constituted the dominant class of securities of which he died possessed. The doctrine of diversification is not the law of Pennsylvania, but even if such were the law the testator's authorization to continue his investments might save the trustees from any charge of unsound treatment of the securities.

Two Pennsylvania cases are cited by petitioner on this point, the first being Evans' Estate, 30 Dist. R. 253. Diversification is not the issue of this case and is not even mentioned. What the court refused to affirm was the distribution to several legatees of undivided interests in a bond and mortgage, the objections thereto being "obvious" as the court states. The second is Jackson's Estate, 16 W. N. C. 480, where again no discussion of diversification is to be found. The executors in that case gave themselves as trustees securities instead of cash to set up the principal of the trust, whereas the award was in cash, and the securities which they took were inadequate if not worthless.

As to the cases cited on the petitioner's brief from other jurisdictions, there is not one case in the decision of which there is any discussion of diversification per se and certainly none wherein the doctrine of diversification per se is the basis of the decision. True it is that in some of these cases trustees were surcharged, but on the ground that they invested (not because they allocated or retained) too large a proportion of the entire trust fund in one single security, not in one class of securities, and furthermore because the will or deed of trust

did not give any directions as to investments. A brief review of these cases will indicate the court's understanding of them.

As to Kimball v. Whitney, 233 Mass. 321, the quotation on petitioner's brief is a dictum. The question was whether any investment in such stock was proper, not whether the amount was proper.

In Dickinson, Appellant, 152 Mass. 184, an investment of about $7,000 out of $16,000 in Union Pacific stock was held excessive. No directions as to investments were given.

Davis, Appellant, 183 Mass. 499, held that an investment of $12,000 out of $30,000, all in Sante Fe stock was excessive. Again, there were no directions in the will as to investments.

In Warren et al., trustees, v. Pazolt et al., 203 Mass. 328, an investment of $750,000 out of $920,000 in one building was stated to be excessive, but no surcharge was made because trustees were exempted from liability for loss in the will.

A Massachusetts case not cited in petitioner's brief is North Adams National Bank, Trustee, v. Curtiss, Guardian, et al., 278 Mass. 471, 180 N. E. 217 (1932). Here the court discusses the question of diversification (p. 480), using that term, "as between stocks and bonds as well as in the percentages of the trust estate invested in the stock of single companies". The court says (p. 482): "Much evidence was introduced tending to prove that according to the best practice of trustees a greater part of the trust fund should have been invested in bonds and a much smaller percentage should have been permitted to remain invested in any one stock than was the case in the larger holdings of this trust. It seems, however, that no arbitrary rule of percentages of the whole fund that may safely be held by a trustee in one form or security has been adopted in Massachusetts." (Citing inter alia the cases of Dickinson, Appellant, and Davis, Appellant, supra.) The conclusion is that the courts of Massachusetts, which seem to have gone farther than other jurisdictions in restricting investment of too large a proportion of the total in any one security, refused to acknowledge that that jurisdiction has any definite rule thereon.

In Harbeck's Estate, 142 Misc. 57, 254 N. Y. Supp. 312, the trustee was surcharged for investing almost the entire principal in bonds of one corporation.

In Davis et al. v. Davis Trust Co., 106 W. Va. 228, 145 S. E. 588, a trustee was surcharged for knowingly exchanging good bonds for worthless stock all in one company.

In Allis' Estate, 191 Wisc. 23, 209 N. W. 945, no surcharge was imposed because of other reasons. There was no discussion of diversification. The petitioner quotes from a dissenting opinion. Further it should be noted that in this case it was the trustee who made the investment objected to, and that the investments were in two companies and not in an industry as a whole.

Our conclusion is that the doctrine of lack of diversification, which also includes that of lack of diversification in the original allocation of the securities to the trusts, as a ground for liability or surcharge has no application to and cannot be considered in this case. First of all, no authority whatever has been shown for such a doctrine. An investment in one company certainly is entirely different from an investment in one industry; secondly, even if such were the law in other States, there is no authority for it in Pennsylvania; and lastly, even if it were the law in Pennsylvania, the extraordinary authority in the will including the power to continue testator's investments would have to be considered and might be regarded as a justification in disregarding any requirements of diversification.

If the petition is to be sustainable at all, therefore, in the first instance, it

490

can only be upon the other ground relied upon by the petitioner, negligence in retaining over a long period of time the same investments notwithstanding their consistent decline.

The Pennsylvania version of the rule of due care governing fiduciaries with respect to investments was laid down in Calhoun's Estate, 6 Watts, 185, 188 (1837). Although this is the leading case upon the subject, it was not cited by either party in this case. However, the familiar phrase of "common skill, common prudence, and common caution" originated in that case, and has been much repeated ever since. This version differs only in phraseology but not in substance from the similar rules in other States. The expression of the rule in all of them may be reduced to the common element of due care under the circumstances.

Applying this rule to the case before us, it cannot be said that because of the extraordinary powers given these trustees they cannot be held accountable regardless of what they do or fail to do. Although the powers granted them are broad and extraordinary, they are not as broad as they might have been. as in the cases where trustees are expressly exempted from liability for losses, and even where trustees have been so exempted from liability the orphans' or probate courts have never abdicated all supervision of such trusts and still do refer to a standard of care, a standard satisfied by less, of course, but the standard is still maintained. See Detre's Estate, 273 Pa. 341, and Clark's Estate, 257 N. Y. 132. Having determined that there is a duty of due care on these trustees, notwithstanding the powers given them in the will, it of course follows that they would be liable if they violated that duty, or in other words, if they were negligent.

It would seem that the only way to determine this question would be after the hearing of evidence, and that the question of negligence or absence of negligence could not be concluded as a matter of law. The holding of the same securities for a long period of time by these trustees could not be concluded per se to be either negligent or not negligent. This would be a matter of evidence as to the circumstances and their conduct under all the circumstances.

A careful examination of every case cited by respondents on this point discloses that in not one single instance has any court anywhere, regardless of how broad the powers given in the will were, concluded as a matter of law that trustees were or were not negligent, or should or should not be surcharged for losses sustained. In every case a hearing was had and evidence taken. Even in cases where the trustees were expressly relieved from liability for losses, the court went into the question of negligence as a matter of evidence: Detre's Estate, supra; Clark's Estate, supra. The courts have consistently and without exception recognized the existence of a standard of care, and have inquired into the facts as to the conduct of the trustees and the circumstances before concluding whether or not the standard has been met.

We hold, therefore, in conclusion, that the petition does not set out a good cause of action for surcharge insofar as it is founded on the ground of bad faith or failure to diversify the investments composing the trust, either at its inception or thereafter during the period of the running of the trust to the date of the adjudication confirmed absolutely May 30, 1925, which it is sought to have reviewed, but that it does set out a good cause of action on its face for surcharge on the alleged ground of negligence in retaining the investments over a long period of time and during a steady decline in value, which would be sustainable if proven by adequate evidence, and that the review should be granted to the petitioner to adduce evidence in support of the allegations upon this ground only, the petitioner, as heretofore held in the decision

hereinabove referred to, not having had at the time of the audit of the account oȷ ȷortunity to be heard upon this allegation.

Ve fu ther hold that Real Estate-Land Title & Trust Company, the corpo ate co rustee, cannot be held responsible or liable for any act or event that tru.ispirec prior to April 14, 1917, when it acceded to its office of cotrustee, nor did it ȷave any duty to examine or otherwise review the conduct of the other trust es prior thereto. We hold these two latter propositions to be so well settled ȷhat no authority need be cited to support them.

We have been disposing of the question of the sufficiency of the petition as though a demurrer had been filed, and therefore are concerned with the petition alone, although an answer has been filed by the respondents. We may say in passing, however, that if the respondents are able to prove the allegations in the answer or even a certain few of them, relative to the steps they took and the thought and study they engaged in in arriving at their decision to retain the investments, they will have established the exercise of care far beyond that required by the law.

And now, January 23, 1934, after mature consideration of the arguments and briefs of counsel, it is ordered and decreed that the adjudication confirmed absolutely May 30, 1925, upon the second account of Sidney F. Tyler and Real Estate-Land Title & Trust Company, cotrustees under the will of the above-named decedent of the trust for Felton Elkins, and the decree of this court of May 20, 1925, discharging Sidney F. Tyler as trustee, be opened and reviewed, to give the petitioner an opportunity to adduce evidence in support of her allegation of negligence on the part of said trustees solely upon the ground of their having retained investments constituting the corpus of the trust as in the petition set out, from the time of their respective accessions to their offices of trustee to the time of the filing of said account, notwithstanding a steady and continued decline in the value of said investments during said period; it is further ordered and decreed that a hearing be had upon this sole question at a time to be fixed upon application of counsel.