In the Matter of the Estate of PEARL DEFOREST MORRIS, Deceased.*

Surrogate's Court, Montgomery County, December 31, 1934.

*William C. Maynard* [*Charles C. Van Kirk* and *Emil Peters* of counsel], for the trustees.

*Compton, Dillon & Clark* [*Frank J. Dillon* and *Herbert C. Pentz* of counsel], for the contestant.

*Carl S. Salmon*, special guardian.

AULISI, S. On this motion to confirm the report of the referee, exceptions and objections have been interposed to his conclusions.

The first of these to consider is the filing of an amended report by the referee. The referee filed his report on November 6, 1934, and upon his attention being called as to the value of the American Tobacco stock on December 20, 1930, it was apparent that he had inadvertently overlooked the evidence with respect thereto. He, therefore, filed an amended report on November 20, 1934, correcting the error. This was done before any action had been taken on the original report. The trustees question the right of the referee to amend his report.

There is a difference between the report of a referee in Supreme Court and that of one in the Surrogate's Court. The report of the

---

* See, also, 149 Misc. 483; 151 id. 325.

referee in Supreme Court to hear and determine is the decision of the court. After it has been filed, the referee has no further jurisdiction over his report, for it becomes the decision of the court upon which a judgment may be entered by the clerk of the court. In the Surrogate's Court the report of a referee to hear and determine is not the decision of the court. No final decree determining the rights of the parties to the proceeding may be entered thereon without further action of the surrogate. Section 66 of the Surrogate's Court Act provides that the report is " *subject, however, to confirmation or modification by the surrogate."* The conclusions of the referee must be deemed to be reported to the surrogate in aid of his decision and decree, which should be founded upon the law as applied to the evidence taken before the referee. The decree is the first binding adjudication, and from it only can an appeal be taken. (*Matter of Barefield,* 177 N. Y. 387.)

The referee, having discovered his error, so advised the court. I believe that the filing of the amended report is proper and does not violate any rule of law or the right of the parties. The exception is, therefore, overruled.

We shall next take up objection No. 13 to the trustees' account. The trustees credit themselves with having paid the sum of $6,117.61 for the fees of attorneys and special guardian allowed and directed to be paid by decree of this court dated January 30, 1931. By order of this court entered on March 3, 1934, said decree was opened as to the contestant, Dorothy Morris Meany, on the ground that the court had acquired no jurisdiction over her in the accounting proceeding and for the purpose of permitting her to take such further proceedings in this court as to the account of said trustees as she may be advised. The contestant Meany objects to the payment of said allowances and asks that the trustees be surcharged with her proportionate share of same.

The sum of $3,549.16 of said allowances was paid to Attorney Frank H. Deal, who acted as special guardian for the contestant Meany and another infant. It is true that the court, not having acquired jurisdiction of Mrs. Meany, had no power to appoint a special guardian for her (*Davis* v. *Crandall,* 101 N. Y. 311), but Mr. Deal originally came into this estate as attorney for Mrs. Meany and her husband on their petition for an order for the delivery of certain jewelry and for an increase in her monthly income. The trustees' account of proceedings followed the above-mentioned application. This was necessary before the surrogate could pass on the question of income. The relief asked for in contestant Meany's said petition was granted by orders of this court entered on October 31, 1930, and December 12, 1930.

It is apparent that aside from the decree settling the trustees' account, Mr. Deal and the other attorneys rendered some services to Mrs. Meany upon her petition. The trustees paid said allowances in good faith and under a decree of this court. Having in mind all the circumstances, I, therefore, dismiss objection No. 13 to the trustees' account.

The trustees, upon this motion, strongly urge that the will of the decedent gave them authority to use their discretion in the investment and management of her estate. An examination of the will, the proof taken herein and the numerous authorities cited by the trustees, fails, in my opinion, to sustain their contention. The pertinent language in the will reads as follows: " I hereby invest and empower them with authority to properly invest and reinvest such funds as may belong to each of my said children and as may come into their or either of their possession as such trustees, *in safe and stable interest bearing securities, and in such manner as will best serve the interest of my said children.*" The stocks purchased, taken and now held by the trustees, while they may be income-producing investments, are not what is termed or known as " interest bearing " securities. The will does not use the terms " income or dividend paying " securities. Testatrix in the use of the words " in such manner as will best serve the interests of my children " did not intend thereby to give the trustees any discretion to make investments in other than " interest bearing " securities. On the contrary, she intended to caution the trustees to have in mind the best interests of her children not only as to the " interest bearing " features but also as to the safety and stability of the investments.

The rule has been laid down and repeatedly followed that a testamentary fiduciary is strictly held to investments authorized by the will. To escape liability for any departure therefrom, the fiduciary must be able to point to a clear testamentary authorization, broad enough to cover the particular act of investment or retention performed. (*Matter of Herriman*, 142 Misc. 164.)

The trustees attempt to justify the retaining of the securities to the present time on the ground that a sale at any time since taking possession thereof would have resulted in a large loss to the trust estate because the stock market was at that time and since has been in a depressed condition, and that they acted in good faith and in the exercise of their best judgment in not selling, expecting market conditions to improve. The proof shows, however, that for a period of several months after the trustees became in possession of the stocks the same could have been sold not only for the price at which they had received them, but at a higher price and thereby could have made a substantial profit for the trust estate.

Whether or not a trustee shall be surcharged for losses occasioned by his failure to convert non-legal investments coming into the trust must always be determined upon the facts and circumstances of the individual case. The period within which he should make the conversion, after the setting up of the trust, also finds its basis in the circumstances of the individual case. In any case he is entitled to a reasonable time in which to act. The present rule is, if a trustee continues to hold non-legal investments and a loss occurs, he must justify his acts by proof of circumstances over which he had no control, or by proof that under the circumstances existing he has acted as " in general prudent men of discretion and intelligence " would have acted. (*Matter of Parsons,* 143 Misc. 368, and cases cited therein.)

The trustees in the case at bar are not guilty of fraud and they did not personally profit in the holding of the stock. The trustee Daniel Naylon is a highly esteemed lawyer of nearly fifty years' experience and with an honorable standing in his community. There is no question in my mind but that he acted in good faith. Public policy, however, has demonstrated that testamentary trustees must be held in a very strict degree to investments authorized by law or by will. In retaining the investments, the trustees erred in their construction of the requirements imposed by the terms of the will, and they failed to observe the law governing the duties of trustees.

If an executor or trustee disregards the provisions of the will, or the rules of law relating to investments, he takes the risk of any loss that might result, without the right to any profit that may accrue by reason of such investment. Trustees must exercise sound discretion, as well as good faith and honest judgment. They must be diligent and prudent in an administration intrusted to them. (*King* v. *Talbot,* 40 N. Y. 76; *Matter of Hall,* 164 id. 196; *Costello* v. *Costello,* 209 id. 252; *Villard* v. *Villard,* 219 id. 482; *Matter of Cady,* 211 App. Div. 373.)

The facts in the case at bar do not bring the questioned investments within the cases relied upon by the trustees. The stocks held were clearly unauthorized and they should have been sold within a reasonable time after the trustees received them.

This they failed to do and while it may seem harsh to hold them for loss when they acted in good faith and without profit to themselves, it must be borne in mind that the law was made for the protection of the beneficiaries of the trust. The trustee is presumed to have knowledge of the law and protect himself by observing same.

In conclusion, I, therefore, overrule all the exceptions and objections to the referee's report and amended report and confirm same.

Submit order on notice accordingly.