In the Matter of the Estate of EVERARD G. TOEL, Deceased.

Surrogate's Court, New York County, February 4, 1943.

*Richard S. Emmet* and *Thomas B. Fenlon* for Bank of New York, as trustee, petitioner.

*Louis C. Haggerty* and *Rene A. Wormser* for Everard G. Toel, Jr., individually and as trustee, and others, respondents.

FOLEY, S.   In this accounting proceeding objections have been filed to the account by Claire L. Toel, as executrix of a deceased life beneficiary, and by Everard George Toel, Jr., the sole remainderman of the residuary trust.   That trust has terminated.   These objections in general attack the conduct of the trustee in making certain investments on the ground that the trustee violated the terms of the will.   Other objections are directed to an attack upon investments because of the

alleged negligence of the trustee in the original investments, or in retaining certain investments.

The objections of the executrix of the deceased life beneficiary are dismissed on the merits. Her testator had executed and delivered an instrument in the form of a general release of the trustee and an approval of an account. That instrument forever quieted any question as to the propriety of the conduct of the trustee in its transactions. (*Matter of Schoenewerg*, 277 N. Y. 424; *Matter of James*, 173 Misc. 1042, affd. 262 App. Div. 703, affd. 287 N. Y. 645, certiorari denied *sub nom. Anthony* v. *U. S. Trust Co.*, 315 U. S. 822.)

The principal question raised by the objections of the remainderman involves the construction of the will and particularly the effect of the limitation written into it by the testator upon the amount which might be invested in any single security.

The residuary estate was given in trust. Out of it the testator instructed the trustee to carve out a fund of $60,000 with income to be paid to his daughter, Adeline Dearborn, for her life. Upon her death the principal of the trust was directed to be added to and form part of the balance of the residuary estate. The income of such balance from the time of the death of the testator was given to his widow for her life. After her death the income was to be paid one half to his son and one half to his daughter.

The clause of the limitation of the amount of investment was contained in paragraph eighth of the will. It reads: "I direct that the Trustee of the said trust funds hereinbefore provided for shall invest the same and keep the same invested in such manner as shall combine good income with reasonable safety so as to produce a net income of about five per cent., but not to place more than Ten thousand dollars in any single investment; * * *."

Counsel for the trustee contend that the above quoted language authorized it to invest the sum of $10,000 in the same form of security in each of the two trusts upon the theory that they were separate and independent. Counsel for objectant on the other hand assert that the testator intended that no investment in either or both trusts in any single kind of security should involve an aggregate of more than $10,000.

The Surrogate sustains the contention of the objectant and holds that the permissible limit created by the will was intended to apply to the entire residuary trusts. Support for that conclusion is found in the language of paragraph eighth quoted above, where the testator began with a direction to his trustee " of the said trust funds," which plainly referred to both

funds created by the will. His further direction "not to place more than Ten thousand dollars in any single investment" is closely related in location and meaning to his initial phrase. Moreover, he provided that the securities and moneys within the trust of $60,000 for the benefit of his daughter, Adeline Dearborn, would upon her death become a part of the balance of the residuary trust. If investments in the same security could have been made out of each fund within the permissible pecuniary amount, a total of $20,000 might have found its way into the ultimate residuary trust fund upon the falling in of the first trust. On this theory the trustee would then have been required to dispose of any excess of a single kind of investment over the permissible limit. No such intent is discoverable. In *Matter of Goebel* (177 Misc. 553, 554) I wrote: "The rule has been frequently stated and repeatedly followed that a testamentary fiduciary is strictly held to investments authorized by the will. To escape liability for any departure therefrom the fiduciary must be able to point to a clear authorization, sufficiently broad to cover the particular character of the investment made or sought to be made." (Citing *Matter of Morris,* 153 Misc. 905; *Matter of Herriman,* 142 Misc. 164; *King* v. *Talbot,* 40 N. Y. 76; *Matter of Hall,* 164 N. Y. 196.)

Here the limitation was clearly defined. Investments in both trust funds were intended to be restricted to the fixed pecuniary amount.

The trustee erred in departing from it and is liable for a surcharge. Typical of the violation of the clause of the will were the original investments in participations in a single bond and mortgage on the property of the Temple Israel of Harlem. The amount of moneys originally invested was $50,000. By payments made on account of principal that amount was reduced to the sum of $18,000. A surcharge is asked by the objectant in that amount. It is his contention that the entire investment was improper and unauthorized. The Surrogate on the other hand holds that since the trustee was authorized to invest up to the sum of $10,000, its liability by way of surcharge must be based upon the excess above the permissible limit. The trustee is entitled to exoneration for any liability in making the investment up to the maximum limit. It is surcharged with the excess of $8,000. Upon payment of that amount into the estate it may retain for its individual purpose the mortgage participation to that extent.

The research of counsel and the Surrogate has revealed no reported decision in this State upon the method of computing the surcharge in such cases. However, in cognate situations

under the rule as to diversification of investments and the placement of trust funds beyond the limit of prudence, a similar method of surcharge has been worked out in other jurisdictions. The reasoning and conclusion reached in these decisions apply to the situation here. (Restatement, Law of Trusts, § 228, subdivision h; 2 Scott on Trusts, § 228.1; *Astbury* v. *Beasley,* 17 Week. Reptr. 638 [1869]; *Matter of Dickinson,* 152 Mass. 184; *Matter of Davis,* 183 Mass. 499; *Kimball* v. *Whitney,* 233 Mass. 321.)

The rule is set forth in the Restatement of the Law of Trusts (*supra*) as follows: " *Extent of liability.* If a breach of trust consists only in investing too large an amount in a single security or type of security, the trustee is liable only for such loss as results from the investment of the excess beyond the amount which it would have been proper so to invest."

Professor Scott in his work on Trusts (*supra*) restates, amplifies and explains this rule. He writes: " If a breach of trust consists only in investing too large a proportion of the estate in a single security or type of security, the trustee should be liable only for such loss as results from the investment of the excess beyond the amount which it would have been proper so to invest. This is clear enough where the trustee makes two successive investments in the same security or type of security. It has been held that where the trustee first invested in a single security an amount which was not excessive, and subsequently invested an additional amount in the same security which was excessive, the trustee is liable only for the loss resulting from the later investment. The situation is not quite so clear where the trustee makes a single investment in an amount which is excessive. It would seem, however, that even in that case the court will not condemn the whole investment, provided that it would have been proper to invest a smaller amount in this way. It is arguable that the whole investment is improper, and that it should not be treated as proper in part and improper in part, and that it would be difficult to fix the precise line indicating the maximum amount which could properly be invested. On the other hand, it seems clearly unfair to the trustee to hold him liable for the whole loss merely because he has invested a larger amount than he should have invested in a single security. In *Astbury* v. *Beasley* where the breach of trust consisted in leaving on deposit in a bank too large a proportion of the trust estate, the trustee was held liable not for the whole loss which resulted on the failure of the bank, but only for the loss which resulted from the deposit

of the amount which was in excess of what would have been proper."

*Astbury* v. *Beasley* (17 Week. Reptr. 638 [1869], *supra*), an English case, and the Massachusetts cases which are cited above, apply the same rule. They exonerated the trustee from liability for the investment within prudent limits. As to the amounts deemed to be excessive the trustee was held liable for the loss.

Subdivision A of the first objection which raised these questions is sustained in part and the foregoing surcharge of $8,000 directed.

The objectant also attacked the validity of the full investment in these mortgage participations upon the ground that the trustee was guilty of negligence in making the original investment. This question is raised by subdivision B of the first objection. It is claimed that the loan was made to Temple Israel of Harlem on its bond and mortgage before the synagogue was built. In other words it was in the nature of a building loan. It may be assumed that if the trustee had been limited to legal investments the original transaction would have been improper and unauthorized. On the other hand, aside from the pecuniary limitation in the amount of any particular investment, the will expressly granted the broadest authority to invest in nonlegals. Power was also given " to exercise the like absolute authority and discretion in making and changing any investment of my estate as I personally could exercise subject to any restrictions contained in this Will." Regardless of any informality in the original investment, the mortgage, after the completion of the building, became a prudent and valid investment and no basis of surcharge therefore exists. Where a trustee makes an investment which at the time he makes it is not a proper trust investment, but which subsequently becomes a proper trust investment and no loss has been incurred in the meantime, " the trustee is not subject to liability even though thereafter the investment depreciates in value. After the investment has become a proper trust investment it would be absurd to require the trustee to sell it if he could immediately properly repurchase it." (2 Scott on Trusts, § 230.5; Restatement, Law of Trusts, § 230, subd. f; *Matter of Adriance,* 145 Misc. 345.) No evidence of negligence or other ground of surcharge has been shown upon this part of the first objection. It is therefore overruled.

[Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.]

Submit **decree on notice settling the** account accordingly.